McHugh, J.
This is a civil action brought by Cynthia Palmi and David Palmi (“the Palmis”), against Metropolitan Property and Casualty Insurance Company (“Metropolitan”). Metropolitan has filed a motion for summary judgment, alleging that the Palmis’ claims for breach of contract and for violations of G.L.c. 93A and c. 176D are barred by the applicable statutes of limitations and that the undisputed facts show that Metropolitan is entitled to judgment as a matter of law on the Palmis’ claim trader c. 93A.
BACKGROUND
The record reveals that the following are undisputed material facts:
On September 11,1990, Cynthia Palmi was injured when the motor vehicle she was operating collided with a motor vehicle owned and operated by Brian Bush (“Bush”). Bush was insured under a standard Massachusetts Automobile Insurance Policy Metropolitan had issued. The policy afforded bodily injury coverage with limits of $15,000 per person.
Ms. Palmi’s attorney, Wayne R. DiCarlo, Esq., (“Di-Carlo"), sent a letter to Bush stating that he represented Ms. Palmi in connection with her personal-injury claim. Bush sent the letter to Metropolitan which received it on November 15, 1990. By letter to DiCarlo dated November 19, 1990, Metropolitan acknowledged receipt of DiCarlo’s letter and requested that DiCarlo forward to it “any and all medicals to date.”
DiCarlo and Metropolitan’s claim representative, Lynne Birchett (“Birchett”) had a telephone conversation about the case in late November 1990, the precise date being absent from the record. During that conversation, Birchett told DiCarlo that Bush had $15,000 in coverage. She also asked DiCarlo to provide her with a medical report regarding Ms. Palmi. DiCarlo agreed to provide the report and told Birchett that he intended to demand the policy in settlement of Ms. Palmi’s claim. By the time of that conversation, DiCarlo had sent Metropolitan medical bills for Ms. Palmi totaling $2,862, and information that her lost wages were $2,846.80. Subsequently, on November 26, 1990, December 4, 1990, and December 6, 1990, Metropolitan received letters from DiCarlo providing additional information and medical authorizations. On December 7, 1990, Metropolitan sent copies of the relevant authorizations to Ms. Palmi’s medical providers and to her employer.
In a telephone conversation on December 17, 1990, Birchett confirmed to DiCarlo that she had received the medical report she had requested during their late November telephone conversation but told him that she would not be able to review it for a couple of weeks. The medical report stated, among other things, that Ms. Palmi’s medical bills totaled $3,191.63. In response, DiCarlo that same day sent Metropolitan a demand for payment of the $15,000 policy limit in settlement of Ms. Palmi’s claim. DiCarlo’s letter informed Metropolitan that the offer would be open only until December 27, 1990, at which point suit would be commenced and would include claims for unreasonable settlement practices under G.L.c. 176D and c. 93A.
Birchett received DiCarlo’s letter no earlier than mid-morning on December 20, 1990. Her office was closed for the weekend of December 22-23, 1990, and was closed for the Christmas holiday on December 24-25, 1990.
During the period December 17-27, 1990, Birchett received additional information from DiCarlo, including a medical bill in a letter dated December 12, 1990 that she received on December 26, 1990. On December 27, 1990, Birchett still was awaiting information she deemed necessary for evaluating Ms. Palmi’s claim, including information Metropolitan had requested from Ms. Palmi’s physical therapists on December 7, 1990, but did not receive until January 14, 1991. By December 27, 1990, Metropolitan also had received conflicting information from Ms. Palmi’s PIP (“Personal Injury Protection”) insurer and her treating physician regarding when she would likely be able to return to work. Metropolitan tried to resolve the conflict by obtaining information from Ms. Palmi’s employer. That employer did not respond to Metropolitan’s written request for additional information but her PIP insurer agreed during a telephone conversation with Birchett on January 31, 1991 that the March 1991 date provided by Ms. Palmi’s treating physician was correct.
The Palmis filed suit against Bush in Fitchburg District Court on January 7, 1991. Metropolitan received notice of the suit on January 19, 1991, although Birchett did not personally receive it until January 31, 1991, coincidentally the same day she had scheduled a review of Ms. Palmi’s claim. On February 1, 1991, Birchett contacted DiCarlo and offered to pay the $15,000 policy limit in settlement of Ms. Palmi’s claim. In a letter dated February 6, 1991, DiCarlo rejected the offer, explicitly stating that his $15,000 demand had been withdrawn on December 27, 1990. DiCarlo’s February 6, 1991 letter contained no new demand but closed with a statement that he *616 would contact Birchett when his client “reached an end result.” Subsequently, after a telephone conversation with Birchett on February 15, 1991, during which Birchett again offered the policy and stated that, because it was prepared to pay the full policy limits, it did not intend to provide Bush with a defense,[1] DiCarlo again made a written rejection of Metropolitan’s settlement offer but made no new settlement demand.
The Palmis’ suit was tried on January 22, 1993, and judgments, with interest, entered in favor of Ms. Palmi and her husband, Richard, in the amounts of $42,185.61 and $9,427.70 respectively. Bush appealed to the Appellate Division. While the appeal was pending, Metropolitan paid the Palmis the $15,000 policy limit. The appeal was dismissed on September 12, 1995.
Bush first learned of Metropolitan’s failure to accept the settlement offer in DiCarlo’s December 17, 1990, letter when he received a letter from DiCarlo on February 28,1997, informing him of that fact. On March 28,1997, Bush executed an assignment to the Palmis of all of his rights against Metropolitan. On April 28, 1997 and May 16, 1997, Bush and the Palmis made a written demand, citing G.L.c. 93A and c. 176D, on Metropolitan for payment of the outstanding executions against Bush. Metropolitan declined to pay those executions and this action was commenced on October 27, 1997.
DISCUSSION
Summary judgment is appropriate when there are no genuine issues of material fact and where the record entitles the moving party to judgment as a matter of law. Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once a party moving for summary judgment has shown that there is no genuine issue of material fact, the burden is then upon the opposing party to respond and allege specific facts showing that there is a genuine triable issue. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). A party who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Id.
A. STATUTE OF LIMITATIONS
The parties agree that the Palmis’ contract claim is governed by a six-year statute of limitations, G.L.c. 260, §2, and that their claims under c. 93A and 176D are governed by a four-year statute of limitations, G.L.c. 260, §5A. The parties disagree, however, on the dates the statutes began to run.
Metropolitan contends that the commencement date for all of the claims is December 27, 1990, when it did not respond to the deadline set in DiCarlo’s December 17 letter. The Palmis contend that the statutes did not begin to run until February 28, 1997, when Bush first learned of Metropolitan’s rejection of DiCarlo’s demand.
For present purposes, all parties are content to assume that there is a genuine issue of material fact regarding whether Metropolitan’s failure to accept DiCarlo’s demand before it was withdrawn on December 27, 1990 was a breach of contract. Assuming that that failure constitutes a breach of contract, there can be no doubt that December 27, 1990 was the date the breach occurred.
Ordinarily, “[a] cause of action for breach of contract accrues at the time of the breach.” Int'l Mobiles Corp. v. Corroon & Black, Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215, 221-22 (1990).
There are, however, situations in which a cause of action for breach of contract is not capable of being discovered because it is based on an “inherently unknowable” wrong. In those cases, the “discovery rule” tolls the accrual date of the statutory period until the injured party knows or should know the facts giving rise to the cause of action . . . The discovery rule has been applied in breach of contract claims in those cases involving the rendering of professional services where a client would not be expected to retrace the professional’s steps nor be able necessarily to recognize the professional’s negligence should the client come across it. The inherently unknowable wrong must be incapable of detection by the wronged parly through the exercise of reasonable diligence.
Id. at 222. See also Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631 (1997); Anthony’s Pier Four v. Crandall Dry Dock Engr., Inc., 396 Mass. 818, 824-25 (1986); Melrose Housing Authority v. New Hampshire Ins. Co., 24 Mass.App.Ct. 207, 211-12 (1987).
I am of the opinion that use of the discovery rule is appropriate in this context. An insured typically is not aware of his insurer’s acts or omissions in the course of handling a claim and has no ready means of discovering them. Indeed, an insurer’s claim-handling acts or omissions are a paradigm of the kinds of acts or omissions that are inherently unknowable to the insured unless and until the insurer chooses to share them. In any event, on the present record, there is at least a genuine issue of material fact regarding whether it was possible for Bush to have known about Metropolitan’s alleged breach of contract before he received DiCarlo’s letter and thus there is a genuine issue of material fact regarding whether the statutes began running any earlier.[2]
Metropolitan nevertheless argues that the Palmis and DiCarlo were aware that Metropolitan had failed to settle Ms. Palmi’s claim on, or shortly after December 27, 1990, and thus that the relevant statutes have run against them even if an action by Bush would not be barred. But assignees like the Palmis stand in the *617 shoes, and assume the rights, of the assignor. The assignor’s rights, not the assignee’s, are dispositive. See Graves Equipment, Inc. v. M. DeMatteo Construction Co., 397 Mass. 110, 112 (1986).[3] In this case, the assignor’s rights are not adversely affected by the statute of limitations.
B. C. 93A AND 176D
The Palmis claim that Metropolitan’s failure to pay the $15,000 policy limit demanded in DiCarlo’s December 17, 1990, letter by the December 27, 1990 deadline that letter contained was unreasonable under Chapter 176D and thus violated Chapter 93A.[4] But DiCarlo’s demand afforded Metropolitan only seven calendar and three business days in which to respond. In fact, Metropolitan tendered the policy on February 1, 1991, 46 days after DiCarlo’s letter, approximately 60 days after DiCarlo first stated that he was going to demand the policy and approximately 94 days after Metropolitan first learned of DiCarlo’s existence.
Chapter 176D does not set out a specific period of time in which a defendant must respond to a demand letter.[5] Instead, c. 176D prohibits an insurer from, among other things,
(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds; [and]
(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.
G.L.c. 176D, §3(9).
None of those provisions was violated by Metropolitan’s failure to respond to DiCarlo’s 10-day holiday ultimatum. In fact, were G.L.c. 176D, §3(9) construed in such a way as to suggest that liability might follow failure to respond to such demands, claims processors repeatedly would find themselves under an onslaught of incongruent demands arbitrarily imposed by individual claimants in uncoordinated fashion. Important as prompt claims resolution surely is, creation of systematic chaos is not a proper route to that result.
Moreover, even if one considers the late November telephone conference between DiCarlo and Birchett as Birchett’s first notice that DiCarlo intended to claim the policy, Birchett’s failure to respond by December 27, would not, on this record, constitute a violation of c. 176D. Ms. Palmi faced no impending deadline that required her to file suit if a settlement agreement was not reached by December 27. Even if Birchett did not review Ms. Palmi’s claim until January 31, 1991, it was not until that date that she was able to resolve the conflict between two sources regarding the date Ms. Palmi was likely to be able to return to work. The day after she resolved that conflict, Birchett contacted DiCarlo and offered to pay the policy limit to Ms. Palmi.
ORDER
In light of the foregoing, it is hereby ORDERED that Defendant’s motion for summary judgment should be, and it hereby is, ALLOWED as to Plaintiffs claim under G.L.c. 93A and is otherwise DENIED.

 Although the record is ambiguous, it appears that Metropolitan ultimately did provide Bush with a defense and that he was represented by counsel when the matter was tried in the District Court.

Metropolitan claims that even if the discovery rule applies, Bush should have known that he sustained harm when the jury in the underlying tort action returned judgments against him in excess of Metropolitan’s policy limit on January 23, 1993. Cantu v. St. Paul Cos., 401 Mass. 53, 57 (1987). But Cantu held that a party has notice of a malpractice claim when a verdict exceeding his coverage is rendered and he has notice that his attorney did not give timely notice to his excess carrier, not that the excess verdict apprises him of a contract claim for his insurer’s failure to reach a settlement in negotiations about which he is still unaware. On January 23, 1993, “the necessary coalescence of discovery and appreciable harm,” id. at 57, had not yet occurred.

Restatement: (Second) of Contracts §335(4) contains an exception to that general rule, i.e., “(a]n assignee’s right against the obligor is subject to any defense or claim arising from his conduct or to which he was subject as a party or a prior assignee because he had notice." The provision is somewhat opaque and has not been frequently interpreted. At its heart, however, is the situation in which an assignee who would be barred by his own conduct from pursuing a given claim against the defendant seeks to do so under shelter of an assignment from someone else. FDIC v. Berry, 659 F.Sup. 1475, 1482 (E.D. Tenn. 1987); State v. Hogg, 535 A.2d 923, 933-34 (Md. 1988). That is not this case. Plaintiffs could not possibly have pursued the claim they now press until they obtained the assignment from Bush. Moreover, plaintiffs’ current claim was entirely foreign to them and arose out of a relationship to which they were strangers. Finally, plaintiffs simply could not have asserted the claim on December 27, 1990, because, not only did they not possess it, but the claim was then, entirely inchoate and was possessed by Bush, whose interests were entirely antagonistic to theirs. In fact, the interests of Bush remained antagonistic to plaintiffs’ until the assignment ultimately took place in 1997.

They do not contend that anything Metropolitan did or failed to do thereafter amounted to a statutory violation.

Nor does c. 93A itself. Instead, c. 93A provides that a plaintiff cannot file suit until 30 days have elapsed after a demand letter of the type set forth in the statute has been *618 sent. G.L.c. 93A, §9(3). The statute also insulates those who make a reasonable offer in response to a statutory demand letter from liability for multiple damages. Id. Rightly, no one contends that DiCarlo’s December 17 letter was a c. 93A demand letter.