Brassard, J.
On December 27, 1999, the plaintiff, United States Fire Insurance (U.S. Fire), paid $1.75 million in settlement of insurance claims that arose from a civil suit brought by a condominium trust against parties insured by U.S. Fire. On December 11, 2000, U.S. Fire brought this action against the defendant, Peerless Insurance Company (Peerless), seeking through a variety of theories to require Peerless to contribute toward the amount paid in settlement because Peerless, too, allegedly provided coverage on these claims to U.S. Fire’s insureds. This matter comes before this court on the parties’ cross motions for summary judgment pursuant to Mass.RCiv.P. Rule 56. For the following reasons, the defendant’s motion for summary judgment is ALLOWED in part and DENIED in part and the plaintiffs motion for partial summary judgment is DENIED.
BACKGROUND
The present action arose out of the construction of a condominium building that began in 1983. At that time, Donald E. Burke (D. Burke) and Marjorie A. Burke (collectively as the Burkes) acquired a property located at 89 Spring Street in Watertown, MA (the property). On February 23, 1984, the Burkes formed a trust, the Treadway Brook Trust (TB Trust) and they conveyed the properly to the TB Trust. In July 1984, D. Burke formed Treadway Development Corporation (TDC). On July 23, 1984, the TB Trust sold the property to TDC.
After TDC acquired the property, U.S. Fire issued an Owner’s and Contractor’s Protective Liability Policy (OCP Policy) with TDC as an insured. The limit on liability was $1 million per occurrence/aggregate. Coverage for the OCP Policy ran from July 24, 1984 to July 24, 1985. U.S. Fire also issued an Umbrella Policy to Harry E. Burke & Sons with TDC added as a named insured on July 24, 1984. The limit on liability was $5 million per occurrence/aggregate. Coverage for the Umbrella Policy ran from April 28, 1984 to April 28, 1985.
When the U.S. Fire Umbrella Policy expired, Peerless issued both a General Liability Policy and a Commercial Umbrella Liability Policy (Umbrella Policy) to Harry E. Burke & Sons. TDC was a named insured only on the Peerless Umbrella Policy. The Peerless Umbrella Policy with TDC as a named insured was for coverage from April 28, 1985 to April 28, 1988.
With respect to indemnification, the Peerless Umbrella Policy contains the following provisions:
The company will indemnify the insured for ultimate loss in excess of the retained policy limit hereinafter stated which the insured may sustain by reason of liability imposed upon the insured by law, or assumed under any contract or agreement by the named insured or by any officer, director, stockholder or employee of the named insured while acting within the scope of his duties as such, for damages because of . . . (b) Property Damage . . . caused by or arising out of an occurrence happening anywhere in the world during the policy period.
Peerless Umbrella Policy, Insuring Agreements, §1.
The Peerless Umbrella Policy defines “Insured” in Insuring Agreements, §V as:
The named insured and also: (a)(1) any officer, director, employee, or stockholder of the named insured while acting within the scope of his duties as such . . .
The Peerless Umbrella Policy defines “Property Damage” in Insuring Agreements, §VI as:
(1) Physical injury to or destruction of tangible property which occurs during the policy period . . .
The Peerless Umbrella Policy defines “Occurrence” in Insuring Agreements, §VI as:
An accident, including continuous or repeated exposure to conditions, which results in . . . property damage .. . neither expected nor intended from the standpoint of the insured.
The Peerless Umbrella Policy also includes the following:
This policy does not apply:
... (d) to property damage to (2) the insured’s products arising out of such products or any part of such products . . .
Peerless Umbrella Policy, Exclusions, §(d)(2) (Products Exclusion).
The Peerless Umbrella Policy also does not apply to:
Property Damage to: (1) property owned . . . by . . . the insured, ... or (5) that particular part of any property, not on premises owned by... the insured . . . (c) the restoration, repair, or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.
*66 Peerless Umbrella Policy, Contractor’s Endorsement, §§III.A.l (Owned Property Exclusion) and III.A.5.C (Faulty Workmanship Exclusion), respectively.
As for a notice requirement, the Peerless Umbrella Policy contains the following provision:
Whenever it appears that an occurrence is likely to involve indemnity under this policy, written notice thereof shall be given to the company or any of its authorized agents as soon as practicable.
With respect to the duty to defend, the Peerless Umbrella Policy contains the following provisions:
With respect to any occurrence not covered by the underlying policies listed in the schedule or any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy except for the amount of the retained limit specified in the declarations, the company shall:
a) defend any suit against the insured alleging such injuiy or destruction and seeking damages on account thereof. . .
Peerless Umbrella Policy, Insuring Agreements, §11.
If underlying insurance is exhausted by any occurrence, the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance
Peerless Umbrella Policy, Conditions, §16.
Except as provided in [Insuring Agreements, §11 and Conditions, §16], the company shall not be called upon to assume charge of the settlement or defense of any claim made or proceeding instituted against the insured.
Peerless Umbrella Policy, Conditions, §5.
Finally, the Peerless Umbrella Policy contains a Severability of Interest Provision that states:
The insurance afforded applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein or [sic] more than one insured shall not operate to increase the limits of the company’s liability.
Peerless Umbrella Policy, Conditions, §3 (Severability of Interest provision).
Construction of the condominium building began in the fall of 1984. In 1985, some of the condominium units began to sell. By December 31, 1985, the first condominium unit was sold. Early in 1986, one of the tenants noticed leaks in the roof and in the garage. The tenants notified D. Burke about the leaks and requested that repairs be made. For the next couple of years, D. Burke attempted to fix the problems to no avail.
On August 15, 1991, the condominium trustees sent TDC and the Burkes a G.L.c. 93A demand letter asking for $250,000 for the repairs and close to $4,000 for attorneys fees. Having received no response to the 93A demand letter, the condominium trustees, through the trust, filed suit (Defective Construction Action) against TDC, the Burkes, and others.[2] In June of 1992, TDC and the Burkes demanded that U.S. Fire defend and indemnify them in the Defective Construction Action under the OCP Policy. On January 15, 1993, U.S. Fire disclaimed coverage and denied TDC and the Burkes’ demand to defend and indemnify.
U.S. Fire claims that in a certified letter dated June 11, 1993, Ellyn Sudak (Sudak) of Insurance Associates, Inc. informed Peerless of the Defective Construction Action and included copies of the deposition subpoena and the complaint. Peerless claims that it never received this letter.
Between October 7,1993 and October 31,1995, the Defective Construction Action plaintiffs wrote letters to U.S. Fire requesting it to accept coverage and settle the claim. By letter dated April 25, 1995, the plaintiffs stated that the actual and projected damages they incurred amounted to approximately $1.5 million. Two of the letters contained offers to settle for $950,000. U.S. Fire did not settle the claim and on November 16, 1995, a jury in the Superior Court found TDC liable and that the Burkes’ “corporate veil” should be pierced. The jury returned a verdict for $1.5 million, plus interest and costs.
On May 6, 1996, the plaintiffs in the Defective Construction Action sent U.S. Fire a G.L.c. 93A demand letter for its bad faith refusal to defend and settle the suit. On January 22, 1997, the plaintiffs in the Defective Construction Action filed suit against U.S. Fire, TDC and the Burkes (Bad Faith Action). Prior to the Bad Faith Action being filed, the Burkes filed for Chapter 7 bankruptcy. The Burkes ultimately entered into a Stipulation and Settlement Agreement which required them to pay approximately $177,000 to the bankruptcy trustee. On November 2, 1999, the Bankruptcy Court discharged the Burkes.
By a decision dated July 15, 1999, this court (McHugh, J.) held that U.S. Fire had a duty to defend and wrongfully failed to do so in the Defective Construction Action. On December 15, 1999, the plaintiffs in the Defective Construction Action and U.S. Fire entered into a settlement agreement in which U.S. Fire agreed to pay $1.75 million. About a year later, on December 11, 2000, U.S. Fire commenced this action against Peerless seeking: (1) contribution; (2) equitable contribution; and (3) a declaratory judgment; and alleging (4) breach of contract; and (5) violations of G.L.c. 93Aand c. 176D.
This court (Gants, J.) dismissed U.S. Fire’s Count I claim for contribution on December 20, 2001 [14 Mass. L. Rptr. 121]. Both parties now move for summary judgment as to Counts II through Count V.
*67 DISCUSSION
1. Summaiy Judgment Standard
The court shall grant summaiy judgment, pursuant to Mass.R.Civ.P. 56, where no genuine issues of material fact exist and where, viewing the record in the light most favorable to the non-moving party, the moving party demonstrates it is entitled to judgment as a matter of law. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711 (1991). The moving party must satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis, 410 Mass, at 716.
The interpretation of an insurance policy is normally a question of law for the court. Ruggerio Ambulance Serv. v. National Grange Ins. Co., 430 Mass. 794, 797 (2000).
The insured has the burden of proving that its loss is within the description of the risks covered. Markline Co., Inc. v. Travelers Ins. Co., 384 Mass. 139, 140 (1981). However, the applicability of exclusions must be proven by the insurer. Murray v. Continental Ins. Co., 313 Mass. 557, 561 (1943). Exclusion provisions are strictly construed, with any ambiguity taken against the insurer. Hakim v. Mass. Insurers’ Insolvency Fund, 424 Mass. 275, 282 (1997).
In reading the relevant portions of the contract a court must first look to the ordinaiy and usual meanings of the relevant language. Id. at 280. In doing so, a court must consider “what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.” Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849 (1993).
2. Equitable Contribution
U.S. Fire alleges that both itself and Peerless were obligated to defend and possibly to indemnify TDC and D. Burke in the Defective Construction Action. U.S. Fire claims that it is entitled to reimbursement from Peerless because it settled for more than its share of the obligation to defend and/or indemnify. Peerless claims that it should not have to reimburse U.S. Fire because Peerless did not have a duty to defend or indemnify TDC and D. Burke in the Defective Construction Action. Peerless argues that the damage alleged in the Defective Construction Action was not covered under the Peerless Umbrella Policy because either a) it was not property damage within the policy definitions, or b) it was excluded under the policy exclusions. Finally, Peerless argues that if this court determines that a duty to defend and indemnify exists, then U.S. Fire should be held solely liable for the first $1,000,000 under the OCP Policy. This court examines each point below.
A. Duty to Defend and Indemnify
“The question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense . . .” Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 331 (1992), citing Continental Cos. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146-47 (1984), quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983). If an insurer has no duty to defend, based on the allegations in the plaintiffs complaint, it necessarily follows that the insurer does not have a duly to indemnify. Bagley v. Monticello Ins. Co., 430 Mass. 454, 459 (1999). See United Nat’l Ins. Co. v. Parish, 48 Mass.App.Ct. 67, 72-73 (1999). In order to determine if there was a duty to defend, we therefore must determine if Peerless’ Umbrella Policy provided coverage.
1. Property Damage
Peerless states that because the Defective Construction Action plaintiffs only alleged “economic damages" they did not state a claim that falls within the Peerless Umbrella Policy’s coverage for “property damage.” Peerless also argues that finding coverage for the cost of replacing the insured’s defective work would improperly transform the insurance policy into something similar to a performance bond. However, U.S. Fire contends that because the plaintiffs alleged actual physical damage to the condominium, and not merely “economic damages,” the loss is covered.
The policy defines “property damage” as:
(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the period.
In order for U.S. Fire to prevail, the Defective Construction Action Complaint must state a claim of damage to property within the Peerless Umbrella Policy. See Smartfoods, Inc. v. Northbrook Property and Cos. Co., 35 Mass.App.Ct. 239, 243 (1993).[3] Physical injuiy requirements in insurance policies exist to prevent recoveiy of mere economic loss. Amtrol, Inc. v. Tudor Ins. Co., Civil Action No. 01-10461-DPW (D.Mass. 2002); O’Neil Constr. Co. v. Nat’l Union Fire Ins. Co. of Pittsburgh, PA, 721 F.Sup. 984, 992-94 (N.D.Ill. 1989); see Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 92 (1995); Smartfoods, Inc., 35 Mass.App.Ct. at 242-43. Policies with such language are not intended to pay the costs of repair or replacing the insured’s defective work and products. Id. However, the physical injuiy requirement does not *68 prevent recovery for further damage to tangible property caused by defective products. Id. This includes any “diminution in value” caused by the physical injury to the tangible property and any costs incurred to remediate the damaged property. Continental Cas. Co., 391 Mass, at 148.
Here, the complaint can be read as seeking recovery for damage to tangible property caused by the defective products. See id. The complaint alleges that as a consequence of the defects in the design and construction of the brick veneer flashing at the site, “there has been leakage into the space beneath the first floor wood framing.” It is further alleged that as a consequence of this leak, the “original gas piping installed beneath two of the buildings at the site corroded ...” The complaint also states that “systemic defects in the design and construction of the roof structure . . . caused . .. further structural damage to the buildings and to the units in the buildings.” Accordingly, the claims alleged in the complaint are “reasonably susceptible” of an interpretation that they are covered under Peerless’ policy. See id.
2. Exclusions a. Insured
As an initial matter it must be determined who has coverage under the Peerless Umbrella Policy. Both parties acknowledge that TDC is a “named insured” under the Peerless Umbrella Policy. However, Peerless contends that neither of the Burkes is a “named insured” under the policy. The Peerless Umbrella Policy provides indemnity for “liability imposed upon the insured by law, or assumed under any contract or agreement by the named insured or by any officer, director, stockholder or employee of the named insured while acting within the scope of his duties ...” “Named Insured” is defined as, “the person or organization named in the declarations.” The policy further states that:
The unqualified word “insured” includes the named insured and also:
(a) . . . (1) any officer, director, employee or stockholder of the named insured while acting within the scope of his duties as such ... (3) if the named insured is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the named insured with respect to the conduct of such business . . .
The policy lists as named insureds: “Harry E. Burke & Sons Inc., Donald E. and Kenneth D. Burke DBA North Union Co and Treadway Development Corporation.” Under the Severability of Interest provision, “[t]he insurance afforded applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein of more than one insured shall not operate to increase the limits of the company’s liability.”
Severability provisions generally “operate to limit the meaning of the term ‘insured party’ in an exclusion clause to the party actually seeking coverage.” Lumberman’s Mut Cas. Co. v. Hanover Ins. Co., 38 Mass.App.Ct. 53, 57-58 (1995); Desrosiers v. Royal Ins. Co. of Am., 393 Mass. 37, 40 (1984). Here, the Severability of Interest provision dictates that any “insured,” not just “named insured,” must be treated as having its own separate insurance policy. The definition of “insured” includes not only the named insured, but also . any officer, director, employee or stockholder of the named insured while acting within the scope of his duties as such ..." The policy provides coverage for “Harry E. Burke & Sons, Inc., Donald E. And Kenneth D. Burke DBA North Union Co., and Treadway Development Corporation.” The Burkes may seek indemnification as “insureds” under the policy because they were both officers of the named insured, Treadway Development Corporation. Accordingly, both of the Burkes must be treated as if the Peerless policy applied to them separately.
b. Owned Property Exclusion and Products Exclusion
Peerless contends that even if the damage alleged by the Defective Construction Action plaintiffs is covered under its policy, nonetheless there is no coverage because of the exclusions in the policy for “owned property” and for “products.” The Peerless Umbrella Policy contains the following exclusion: “(d) to property damage to (1) property owned by the insured, or (2) the insured’s products arising out of such products or any part of such products.” Peerless contends that the condominiums were owned by and also the product of TDC and the Burkes and therefore coverage is excluded. U.S. Fire states that the exclusions do not apply as against the Burkes because the Peerless Umbrella Policy is applied to the Burkes separately from TDC under the Severability of Interest provision and the condominiums were not owned by the Burkes or the Burkes’ products, but rather owned by and the products of TDC.[4]
This court has already determined that the Sever-ability of Interest provision requires separate application of the policy to the Burkes so the question becomes whether or not the condominiums were owned by or the product of the Burkes. Therefore, in order for the exclusions to apply the Burkes must have acted in their individual capacity in building the condominiums. In other words, TDC’s corporate veil must be pierced.
In order to pierce the corporate veil it must be shown that:
[1] there is active and pervasive control of related business entities by the same controlling persons and there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or [2] there is “a confused intermingling of activity of two or more corporations engaged in a *69 common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.”
Evans v. Multicon Constr. Corp., 30 Mass.App.Ct. 728, 732 (1991), quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968).
In addition, courts consider twelve additional factors in deciding whether to pierce the corporate veil. These include the following factors: (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) non-functioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud. Evans, 30 Mass.App.Ct. at 733. The question of whether to pierce the corporate veil is fact-intensive. See id.
While it is true that the juiy in the Defective Construction Action found sufficient facts to warrant piercing TDC’s corporate veil on behalf of the Condominium Trust, that does not necessarily mean that U.S. Fire can stand in the shoes of the Condominium Trust and pierce TDC’s corporate veil. “(T]he fact that, as to one set of litigants in one set of circumstances the court reaches a conclusion that the protective corporate barrier should be denied the officers and shareholders does not necessarily mean that it should be denied as to another set of litigants in very different circumstances.” Treadway Brook Estates Condo. Trust v. United States Fire Ins. Co., Civil Action No. 97-0397 (Middlesex Superior Court, July 15, 1999) (McHugh, J.). Piercing the corporate veil is only an option in “rare particular situations to prevent gross inequity.” My Bread Baking Co., 353 Mass, at 620. Courts are more likely to pierce the corporate veil on behalf of involuntary creditors who did not have the opportunity to contractually plan for possible future risks. See id. Here, Peerless, by defining “insured” to include corporate officers and shareholders, appears to have contractually planned for the possibility that it would have to provide individual coverage to the Burkes.
Furthermore, the juiy’s ultimate piercing of TDC’s corporate veil was not something that any of the parties could have anticipated during the initial stage of the underlying litigation. It is during that initial stage that the duly to defend would arise. The obligation to defend would therefore have obtained at least up until the jury verdict itself.
In any event, there are, notwithstanding the verdict in the Defective Construction Action, issues of fact as to whether the corporate veil should be pierced. Here, Peerless, in support of its claim that the condominiums were the Burkes’ product states that D. Burke personally applied for a permit to build the condominium from the Town of Watertown and in that application listed himself as the “builder.” Peerless states that D. Burke was “supposed to be” in complete control of the project. U.S. Fire disputes these contentions, stating that D. Burke was not the “builder” of the condominiums and that D. Burke was only involved in the project as President of TDC. These issues of fact regarding whether TDC’s corporate veil should be pierced must be determined at trial. Accordingly, determination of whether the “owned property” exclusion and the “products” exclusion bar coverage must also be determined at trial.
c. Faulty Workmanship Exclusion
In addition to claiming that the “owned property” exclusion and the “products” exclusion bar coverage, Peerless also claims that the “faulty workmanship” exclusion in the Peerless Umbrella Policy bars coverage. The exclusion, which is found in the Contractor’s Endorsement, excludes coverage for:
Property Damage to: (5) that particular part of any property, not on premises owned by... the insured . . . (c) the restoration, repair, or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.
Faulty workmanship exclusions like the one in the Peerless Umbrella Policy, that are limited to “that particular part of any property,” operate to exclude coverage for the work product of the insured but not for damage to larger units of which the insured’s work product is but a component. Bond Bros., Inc. v. Robinson, 393 Mass. 546, 547-48 (1984); Frankel v. J. Watson Co., Iric., 21 Mass.App.Ct. 43, 46 (1985).
Here, the exclusion only applies to “property not on premises owned by . . . the insured.” As discussed previously, whether or not the Burkes owned the condominium is dependent on whether TDC’s corporate veil is pierced, which is a factual issue that must be determined at trial. Accordingly, whether the faulty workmanship exclusion bars coverage must also be determined at trial.
Because the question of whether the exclusions in the Peerless Umbrella Policy preclude coverage must be determined at trial, the question of whether Peerless had any duty to defend and indemnify must also be determined at trial.
B. U.S. Fire’s Sole Responsibility for the First $1,000,000
Peerless argues that if it did have a duty to defend, this court should find that U.S. Fire, as the primary insurance carrier, is solely liable for the first $1,000,000. U.S. Fire argues that the liability should be determined on a pro rata basis since this court *70 (McHugh, J.) could not determine as a matter of law that an “occurrence” had not happened within the U.S. Fire’s OCP Policy period. U.S. Fire argues that the majority of the “occurrence” happened within Peerless’ Umbrella Policy period and thus, Peerless should pay its pro rata share. U.S. Fire argues that the court should determine that the pro rated shares of liability are as follows: $1,220,000 for Peerless and $530,000 for U.S. Fire.
No Massachusetts court has explicitly delineated how liability should be apportioned between a primary insurer and an excess insurer when the primary insurer has settled for more than its policy limit. See Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am,, 338 F.3d 42, 49 (1st Cir. 2003). Turning to U.S. Fire’s argument, this court is not inclined to apportion liability on a pro rata basis as it would be contrary to the plain language of the two insurance policies. See id. The U.S. Fire OCP Policy states that:
The insurance afforded by this policy is primary insurance . . . When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company’s liability under this policy shall not be reduced by the existence of such other insurance.
U.S. Fire OCP Policy, Conditions, §5.
The Peerless Umbrella Policy states, “the company will indemnify the insured for ultimate net loss in excess of the retained limit . . .” Peerless Umbrella Policy, Insuring Agreements, Coverage. Moreover, the Peerless Umbrella Policy defines “retained limit” as, “the total of the applicable limits of liability of the underlying insurance . . .” Peerless Umbrella Policy, Insuring Agreements, Underlying LimitRetained Limit.
Based on these policy provisions, this court finds that if it is determined that Peerless had a duty to defend and indemnify, Peerless should only be liable for that amount that it stated it would cover in its Umbrella Policy, that is for any excess over the primary policy limit of $1,000,000. Thus, the defendant’s summary judgment motion is allowed with respect to this issue.
3. Subrogation
U.S. Fire brings Count III, IV, and v. as subrogee of TDC and D. Burke. “Subrogation is an equitable adjustment of rights that operates when a creditor or victim of loss is entitled to recover from two sources, one of which bears a primary legal responsibility. If the secondary source (the subrogee) pays the obligation, it succeeds to the rights of the party it has paid (the creditor or loss victim, called the subrogor) against the third, primarily responsible party." Frost v. Porter Leasing Corp., 386 Mass. 425, 426-27 (1982); see also Traveler's Ins. Co. v. Graye, 358 Mass. 238, 240-41 (1970).
The U.S. Fire OCP Policy reads, in pertinent part:
In the event of any payment under this policy, [U.S. Fire] shall be subrogated to all the insured’s rights of recovery therefore against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.
Under the plain language of the above stated provision, TDC and D. Burke were required to execute and deliver whatever instruments might be necessary to effectuate the subrogation. Both parties agree that there is no express assignment of rights effectuating the subrogation and thus, Peerless argues that U.S. Fire cannot proceed on this claim. Subrogation, however, may arise “by implication, as a matter of general law.” Frost 386 Mass, at 426-27. Thus, U.S. Fire argues that it may proceed with an equitable subrogation claim.
The plain language of U.S. Fire’s OCP Policy does not limit subrogation as to certain causes of action or as against certain people or organizations. Moreover, this court has recognized the right of an insurance company, which pays a claim, to seek reimbursement from another insurer that should have satisfied the claim. Premier Ins. Co. of Mass. v. Empire Fire and Marine Ins. Co., Civil No. 00-484 (Essex Supr. Ct. January 14, 2002) (Kottmyer, J.) (14 Mass. L. Rptr. 97), citing Nat’l Union Fire Ins. Co. v. Am. Motorists Ins. Co., 269 Ga. 768, 769 (1998). The public policy favoring this right of a paying insurer is served by a rule which encourages insurers to act promptly to protect their insured’s interests and to resolve disputes among themselves afterwards. For these reasons, this court determines that equitable subrogation can exist as between a primary insurer such as U.S. Fire, and an excess insurer such as Peerless.
Additionally, Peerless argues that U.S. Fire cannot be a valid subrogee of TDC because TDC was officially dissolved on January 31, 1989. This argument, however, does not have any merit. In claims made under subrogation, a subrogee only has those rights that a subrogor would have had. See Frost, 386 Mass, at 426-27. TDC, by operation of a certificate of revival under G.L.c. 156B, §108, could have brought this action itself. See Devlin Constr. Corp. v. Driftway South Constr. Corp., 14 Mass.App.Ct. 954 (1982) (rescript).
Finally, Peerless argues that U.S. Fire cannot be a valid subrogee of D. Burke because all of D. Burke’s rights belong to the bankruptcy estate and thus to the bankruptcy trustee and there has been no express assignment of rights between the trustee and U.S. Fire. U.S. Fire, however, claims that subrogation rights do not become part of the bankruptcy estate.
Under U.S.C. §541(a)(10) the bankruptcy estate “is comprised of... all legal or equitable interests of the debtor in property as of the commencement of the case.” This includes all interests of the debtor in causes of action. Cole v. Pulley, 18 Mass.App.Ct. 950, 950 (1984). However, the debtor’s interests in an asset or his rights against others are not expanded by the filing of a bankruptcy proceeding. In re Squyers, 172 B.R. 592, 594 (Bankr.C.D.Ill. 1994). To the extent that *71 the legal or equitable interest of the debtor in property is limited in the debtor’s hands, it is equally limited as property of the estate. Id. The bankruptcy trustee can only gain the rights the debtor actually has. This principle is applicable to a debtor’s interest in an insurance policy at the time of adjudication. Id. Absent a contrary federal provision, the debtor’s interest in property is determined by applicable state law. In re Atchison, 925 F.2d 209 (7th Cir. 1991).
As previously discussed, this court has determined that under Massachusetts law, U.S. Fire may pursue an equitable subrogation claim and did not need an express assignment by the Burkes or TDC. Equitable subrogation is . enforceable against the insured outside the realm of bankruptcy . . . ," therefore, it “should be enforced against debtors and bankruptcy trustees as well.” In re Squyers, 172 B.R. at 594. Accordingly, because U.S. Fire had equitable subrogation rights regarding the Burkes and TDC, it also had equitable subrogation rights with regards to the bankruptcy trustee. By definition these equitable subrogation rights eliminate the need for an express assignment by the bankruptcy trustee.
4. Declaratory Judgment
U.S. Fire, both individually and as subrogee of TDC and D. Burke, in Count III of its Complaint,'requests that this court make a declaratory judgment pursuant to Mass.R.Civ.P. 57. U.S. Fire asks that this court determine the rights, duties, and obligations of the parties with respect to the Peerless Umbrella Policy and determine that Peerless was legally obligated under its Umbrella Policy to defend or indemnify TDC and D. Burke in the Defective Construction Action.
Relief in the form of declaratory judgment is not granted by the court as a matter of right; rather it is granted where appropriate, as a matter of judicial discretion. Hogan v. Hogan, 320 Mass. 658, 663 (1947). As stated above, this court determines that if Peerless should be liable for any amount, Peerless, as an excess insurer, would only be liable for that amount over $1,000,000. With respect to the remaining issues, this court determines that material issues of fact exist in this case regarding the existence of a duty by Peerless to defend and indemnify. Those factual issues make further declaratory relief inappropriate at this time. Therefore, the plaintiffs motion for summary judgment as to Count III of the Complaint is denied and the defendant’s motion for summary judgment as to Count III of the Complaint is allowed in part and denied in part.
5. Breach of Contract
U.S. Fire alleges that since it settled the Bad Faith Action, U.S. Fire has become subrogated to the rights of TDC and D. Burke under their policy with Peerless. Thus, U.S. Fire, as subrogee, claims that Peerless breached the duty of good faith and fair dealing implied in its insurance contracts with TDC and D. Burke by failing to respond to their demand for defense and indemnify in the Defective Construction Action. Moreover, U.S. Fire claims that Peerless breached its insurance contracts with TDC and D. Burke by failing to defend and indemnify them in the Defective Construction Action.
Peerless responds that neither TDC nor D. Burke ever tendered it a defense for the Defective Construction Action. Moreover, Peerless maintains that even if it was tendered a defense by TDC or the Burkes, it was not timely and thus prejudicial. Therefore, Peerless argues that it was not in breach of contract.
A. Tender of Defense
Ordinarily, before an insurer will be required to provide a defense, the insured must tender the claim. “Mere knowledge that an insured is sued does not constitute tender of a claim. What is required is knowledge that the suit is potentially within the policy’s coverage coupled with knowledge that the insurer’s assistance is desired .. . An insurance company is not required to intermeddle officiously where its services have not been requested.” Fanaras Enters. Inc. v. Law Offices of Roger Allen Doane, Civil No. 87-2612 (Essex Super. Ct. September 7, 1993) (Rouse, J.) (1 Mass. L. Rptr. 145), quoting Hartford Acc. and Indem. Co. v. Gulf Ins. Co., 776 F.2d 1380, 1383 (7th Cir. 1985).
In the present case, the Peerless Umbrella Policy includes a notice provision that states, in part:
Whenever it appears that an occurrence is likely to involve indemnity under this policy, written notice thereof shall be given to the company or any of its authorized agents as soon as practicable.
Thus, any notice that Peerless receives must put Peerless on notice that its excess policy is triggered and that its services are required for the defense. See Eastern Products Corp. v. Continental Cas. Co., 58 Mass.App.Ct. 16, 26-27 (2003). U.S. Fire claims that the Sudak letter did just that. Peerless, however, maintains that it did not receive that letter. Moreover, Peerless urges that even if it received the letter, the letter does not put it on notice that its services are warranted in the defense of the insureds as the letter did not specifically request that Peerless defend and indemnify the insured in the Defective Construction Action. Because the parties dispute that the Sudak letter was received by Peerless, there is a genuine issue of material fact. Thus, this court cannot grant summary judgment on Count IV of the Complaint.
B. Timely Notice
With respect to notice of the claim, the Peerless Umbrella Policy language in Conditions, §4, states that:
Whenever it appears that an occurrence is likely to involve indemnity under this policy, written notice thereof shall be given to the company or any of its authorized agents as soon as practicable.
Under the plain language of the policy, the notice requirement is tied, not to an occurrence, but rather *72 to the time it appears to the insured that the excess policy is going to be triggered, that is, the amount of the damages will exceed $1 million. See Eastern Products Corp., 58 Mass.App.Ct. at 26-27.
U.S. Fire alleges that Peerless was notified of the Defective Construction Action by Sudak’s June 14, 1993 letter. At that time, TDC and the Burkes had no basis for a claim against an excess insurer since the only figure quoted by the plaintiffs in the Defective Construction Action was the $250,000 in damages as stated in the August 15, 1991 93A demand letter. The notice, however, could be read to give warning that the excess coverage of the policy might later be attained and the insurer should attend to the insureds’ interests. In fact, by a letter dated May 10, 1995, the insureds were notified that the damages sustained in the Defective Construction Action were estimated at $1,500,000 but that the plaintiffs in the Defective Construction Action were willing to settle for $950,000.
Peerless, however, in its response to U.S. Fire’s request for admissions, disputes that it ever received Sudak’s June 14, 1993, letter. Peerless claims that it first learned of the Defective Construction Action when U.S. Fire filed its complaint in the present action, that is December 11, 2000. Peerless argues that having received such late notice, it was prejudiced with respect to the Defective Construction Action. Thus, there is a fact dispute as to when Peerless received notice of the Defective Construction Action. Since the parties genuinely dispute a material fact, neither party is entitled to summary judgment as a matter of law on Count IV of the Complaint.
6. G.L.c. 93A Claim and c. 176D Claim
U.S. Fire claims, individually and as a subrogee, that Peerless is in violation of G.L.c. 176D, §3(9) because Peerless (1) failed to respond to TDC and D. Burke’s demand for defense and indemnification in the Defective Construction Action; (2) failed to make a minimal investigation in the Defective Construction Action to determine if the claims were covered under the Peerless Umbrella Policy; and (3) refused to defend or indemnify TDC and D. Burke without conducting a reasonable investigation. Moreover, U.S. Fire claims that the above-listed actions and omissions constitute unfair and deceptive acts or practices in the business ofinsurance, in violation of G.L.c. 93A, §§2, 9, and 11.
Peerless, however, contends that U.S. Fire’s claims are time-barred because the statute of limitations on G.L.c. 93A claims is four years. Peerless states that U.S. Fire filed the complaint in the present action on December 11, 2000 but that the incidents alleged in the 93A claim occurred at the latest in March 1996, that is, the date judgment entered against TDC and D. Burke in the Defective Construction Action.
Both U.S. Fire’s claims rest on whether TDC or the Burkes or U.S. Fire itself knew or should have known of facts that would indicate that Peerless had breached its duty to defend before December 11, 1996. “(AJn insurer’s claim-handling acts or omissions are a paradigm of the kinds of acts or omissions that are inherently unknowable to the insured unless and until the insurer chooses to share them.” Palmi v. Metro. Prop, and Cas. Ins. Co., Civil No. 97-5617 (Middlesex Super. Ct. February 25, 1999) (McHugh, J.) (9 Mass. L. Rptr. 614). Peerless never responded to Sudak’s June 14, 1993 letter. With no explanation by Peerless of why coverage was denied, whether the Burkes or TDC or U.S. Fire knew or should have known of facts that would indicate Peerless’s breach of its duty to defend presents an issue of fact that must be determined a trial. For this reason, summary judgment on Count v. of the Complaint is denied.
7. Equity
Finally, Peerless argues that it should not be liable to U.S. Fire because U.S. Fire could have settled within its policy limits. Peerless points to the May 10, 1995 and October 31, 1995 letters as proof that the Defective Construction Action plaintiffs were willing to settle for $950,000, which is within the U.S. Fire OCP Policy limits.
A finding of bad faith for a primary insurer’s failure to settle within its policy limits requires a showing that “no reasonable insurer would have refused the settlement offer or would have refused to respond to the offer.” Hartford Cas. Ins. Co. v. N.H. Ins. Co., 417 Mass. 115, 121 (1994). As this is a fact-intensive issue, this court does not find it appropriate for summary judgment purposes. Thus, this argument must fail.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s Motion for Summary Judgment is ALLOWED insofar that a declaratory judgment shall issue that if the defendant is determined to be liable, its liability is limited to damages in excess of the first $1,000,00 of the contribution claim and DENIED with respect to its remaining claims. It is further ORDERED that the plaintiffs Motion for Partial Summary Judgment is DENIED on all claims.

The Defective Construction Action additionally included as named defendants the subcontractors that worked on the construction of the condominium building: Edward Nilsson d/b/a Edward Nilsson Associates, John E. Ross Mechanical Contractors, Inc., John Ross, John Doe Roofing Contractor, John Doe Waterproofing Contractor, and John Doe Masonry Contractor.

It is appropriate to look to the Defective Construction Action complaint not only because the duty to defend is determined during the initial stages of litigation, but also because the jury verdict in the Defective Construction Action did not specify which of the property damages alleged the jury awarded damages for.

Both parties appear to agree that coverage for TDC would be precluded by the exclusions contained in the Peerless Umbrella Policy.