THE TRAVELERS INSURANCE COMPANY *vs.*
WILLIAM J. GRAYE & another.[1]

Middlesex.   October 9, 1970. — November 2, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, REARDON, & QUIRICO, JJ.

*Subrogation.   Insurance,* Subrogation, Waiver by insurer.   *Election.*
*Estoppel.   Waiver.   Equity Jurisdiction,* Declaratory relief.   *Equity*
*Pleading and Practice,* Demurrer, Declaratory proceeding.

A justiciable issue and an actual controversy within G. L. c. 231A were
presented by the bill in a suit in equity by the insurer under a yacht
insurance policy, which had paid the insured the full amount of the
policy following the sinking of the yacht, seeking to be subrogated to
the extent of its loss to the rights of the insured in a tort action sub-
sequently brought by him against the owner of a boat which had
collided with the yacht, and a demurrer to the bill was rightly over-
ruled notwithstanding the fact that the respective rights of the in-
surer and the insured were contingent upon the outcome of the tort
action.   [240]

The insurer under a yacht insurance policy, which had paid the insured
the full amount thereof following the sinking of the yacht, was en-
titled in equity to be subrogated to the extent of its loss to the rights
of the insured in a tort action subsequently brought by him against
the owner of a boat which had collided with the yacht, although the
policy contained no express provision with respect to subrogation.
[240–241]

An express reservation of subrogation rights in automobile cases by an
insurer in a medical release form pertaining to personal injuries only,
signed by the insured under a yacht insurance policy, did not constitute
a waiver of subrogation rights by the insurer with respect to loss of
the yacht where it was sunk in a collision with a boat owned by a
third party and the insurer paid the insured the full amount of the
policy.   [241]

An unsuccessful attempt by the insurer under a yacht insurance policy to
salvage the yacht after it had been sunk in a collision with another
boat did not constitute an election of remedies which estopped the
insurer, upon paying the insured the full amount of the policy, from
seeking to be subrogated to the extent of its loss to the rights of the
insured against the owner of the other boat.   [242]

BILL IN EQUITY filed in the Superior Court on January 2,
1968.

[1] Arthur Williams.

The suit was heared by *Leen,* J., on demurrer and on the merits.

*Terence F. Riley* for the defendant Graye.

*William R. Hall* for the plaintiff.

SPALDING, J. This bill for declaratory and other relief was heard on stipulated facts and documentary evidence which the judge treated as a statement of agreed facts. The plaintiff seeks to have the defendant Graye ordered to execute an assignment to it of his rights and causes of action to the extent of $12,000 against any third party responsible for the sinking of his yacht.

On August 28, 1966, Graye's yacht, the "Nepenthe," was sunk off Tinker's Ledge, Marblehead, and has never been recovered. The yacht was insured by Graye with the plaintiff under a policy with a limit of $12,000. The full amount of the policy was paid by the plaintiff to Graye on October 25, 1966. Thereafter, Graye brought an action of tort in the Superior Court against the defendant Williams who is the owner of the boat that collided with the "Nepenthe." In the present proceeding, the plaintiff seeks to be subrogated to the rights of Graye in his action against Williams to the extent of the $12,000 payment it has made to Graye.

The policy contained no express provision with respect to subrogation. The plaintiff made an attempt to salvage the yacht, but without success. Thereafter, on November 25, 1966, the plaintiff presented Graye with a subrogation agreement which Graye refused to execute. The plaintiff took the position that subrogation is not dependent on its being expressly provided for in the policy but rather is based on principles of equity and the nature of the contract of insurance. Graye contended that no right of subrogation exists because it is not expressly provided for in the policy; he further contended that when the plaintiff exercised its salvage rights it made an election and is now estopped to claim subrogation.

The judge ordered a decree to be entered adjudging that the plaintiff was entitled to be subrogated to the rights of Graye against Williams to the extent of $12,000, and order-

ing Graye to execute and deliver to the plaintiff an assignment of his rights and causes of action against Williams to the extent of $12,000. From a decree in accordance with this order, Graye appealed. Graye demurred to the bill, and from an interlocutory decree overruling the demurrer he also appealed.

1. The bill was not demurrable; it presents a justiciable issue and an actual controversy. This remains true even though the respective rights and responsibilities of the parties are contingent upon the outcome of the tort action against the defendant Williams by Graye. General Laws c. 231A is "to be liberally construed and administered," and where, as here, an actual controversy has arisen, a bill for declaratory relief will lie though the liability of the defendant Williams has not been established. See *Improved Mach. Inc.* v. *Merchants Mut. Ins. Co.* 349 Mass. 461, 463. "[U]nless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation." *School Comm. of Cambridge* v. *Superintendent of Schs. of Cambridge,* 320 Mass. 516, 518. See also *Crompton* v. *Lumbermens Mut. Cas. Co.* 334 Mass. 207, 211.

2. The right of subrogation is not dependent on contract but "rest[s] upon natural justice and equity." *Amory* v. *Lowell,* 1 Allen, 504, 507. See *Massachusetts Hosp. Life Ins. Co.* v. *Shulman,* 299 Mass. 312, 316. The doctrine is expounded in Arnould on Marine Insurance (14th ed.) § 1225: "Subrogation is an equitable arrangement incident to all contracts of indemnity and to all payments on account thereof. 'The general rule of law (and it is obvious justice),' said Lord Blackburn, 'is that [where] there is a contract of indemnity (it matters not whether it is a marine policy or a policy against fire on land, or any other contract of indemnity) and a loss happens, anything which reduces or diminishes that loss reduces or diminishes the amount which the indemnifier is bound to pay; and if the indemnifier has already paid it, then if anything which diminishes the loss comes into the hands of the person to whom he has paid it, it becomes an equity that the person who has already paid

the full indemnity is entitled to be recouped by having that amount back.' " [2]

Arnould continues: " 'As between the underwriter and the assured, the underwriter is entitled to the advantage of every right of the assured, whether such right consists in contract, fulfilled or unfulfilled, or in remedy for tort capable of being insisted on or already insisted on, or in any other right . . . by the exercise or acquiring of which right or condition the loss against which the assured is insured, can be, or has been diminished.' " [3] The foregoing views are supported by other commentators on the subject. See Kimball and Davis, The Extension of Insurance Subrogation, 60 Mich. L. Rev. 841, 849; Appleman, Insurance Law and Practice (1962) § 4121; and Couch, Insurance (2d ed.) § 61: 332. The case law is to the same effect. See, e.g., *The "Potomac,"* 105 U. S. 630, 634; *Brown* v. *Merchants' Marine Ins. Co. Ltd.* 152 Fed. 411, 413 (9th Cir.); *Frank B. Hall & Co. Inc.* v. *Jefferson Ins. Co.* 279 Fed. 892, 894 (S. D. N. Y.); 44 Am. Jur. 2d, Insurance, § 1829, and cases cited therein. Reason as well as authority supports these views. If Graye were permitted to recover under the policy and in addition retain the proceeds of his action against Williams, he would be unjustly enriched by double recovery, either in whole or in part, a result which the law has never looked upon with favor.

3. Graye suggests that the medical release form presented to him by the plaintiff (and signed by him) constitutes a waiver of subrogation rights because of a clause contained therein that expressly reserves subrogation rights for automobile cases. He argues that by reserving such rights for automobile cases, the company waives them for all other cases (including, of course, marine cases). This argument must be rejected since the release form pertains to personal injuries only and not to property damage.[4]

---

[2] *Burnand* v. *Rodocanachi Sons & Co.* [1882] 7 A. C. 333, 339.

[3] *Castellain* v. *Preston,* [1883] 11 Q. B. 380, 388.

[4] Contrary to Graye's contention, we are not persuaded that because the Legislature has expressly provided for subrogation in fire insurance policies (G. L. c. 175, § 99) it intended to abrogate subrogation in other types of policies.

4. Graye's final argument, unsupported by authority, that the plaintiff's attempt to salvage the yacht amounted to an election which precludes subrogation is without merit. We are of opinion that the attempted salvage of the yacht by the plaintiff was not inconsistent with subrogation, and therefore did not estop the plaintiff from pursuing that remedy. See *The St. Johns,* 101 Fed. 469, 472 (S. D. N. Y.).

*Interlocutory decree affirmed.*

*Final decree affirmed with costs.*