34 Mass. App. Ct. 293 (1993)
609 N.E.2d 1243
LIBERTY MUTUAL INSURANCE COMPANY[1]
vs.
NATIONAL CONSOLIDATED WAREHOUSES, INC., & another.[2]
No. 91-P-1119.
Appeals Court of Massachusetts, Hampden.
December 15, 1992.
March 30, 1993.
Present: DREBEN, KASS, & IRELAND, JJ.
Janice A. Healy for the plaintiff.
Cauleen Ross Kearney for the defendants.
IRELAND, J.
This appeal raises issues concerning the subrogation rights of an insurer when the indemnified insured signs a release which has the effect of releasing parties allegedly liable for the loss. Liberty Mutual Insurance Company (Liberty) issued an insurance policy to Massachusetts Mutual Life Insurance Company (Mass. Mutual) covering damage *294 to personal property. Following payment of a loss to Mass. Mutual, Liberty, as a subrogee of Mass. Mutual, brought an action against National Consolidated Warehouses, Inc. (National), D.H.J. Facemate Corporation (Facemate),[3] and the city of Chicopee for damages arising out of a fire which occurred at National's warehouse in Chicopee. Mass. Mutual had stored about $470,000 worth of stationery forms and paper supplies in National's warehouse, and these were destroyed in the fire.
After the filing of Liberty's subrogation action, Mass. Mutual on its own account brought a separate action against National, Facemate, and the Employers Insurance of Wausau (Wausau) seeking payment for the personal property destroyed in the fire. That action was put to rest by a settlement agreement which by its terms, as set forth in a release, "settled all [c]ontractual [l]iability between the parties." The parties to that latter action also filed a stipulation in Superior Court dismissing the case with prejudice.
National and Facemate then filed a motion for summary judgment in Liberty's action. A Superior Court judge granted summary judgment on the ground that the settlement and final judgment in the second case precluded Liberty's case as subrogee.[4] Liberty appeals, claiming that the judge erred in granting summary judgment for the defendants because (1) the release executed by Mass. Mutual did not extinguish, but expressly preserved, Liberty's subrogation rights; and (2) there was a genuine issue of material fact as to the intent of the parties in executing the release. We reverse.
Some additional facts will be of assistance in understanding the arguments on appeal. After the fire, Mass. Mutual filed a claim for the loss with Liberty, which paid the policy limit of $140,000 to Mass. Mutual. Liberty then brought its action as subrogee in the name of its insured against National *295 and Facemate alleging negligence and breach of warranty, and seeking damages in the amount of $150,000.[5]
Mass. Mutual then filed the second claim we have adverted to in the amount of $169,733 with National's insurance carrier, Wausau. That amount was calculated according to the weight of the destroyed materials stored in National's warehouse and the $.50 per pound insurance coverage which was included in National's storage charge. Wausau denied Mass. Mutual's claim, and Mass. Mutual then brought its action against National, Facemate, and Wausau for breach of contract, violations of G.L.c. 93A, and tortious misrepresentation.[6] While Liberty's complaint was still pending, Mass. Mutual entered into its settlement with National, Facemate, and Wausau. In return for $147,582, Mass. Mutual executed the release we have described. It terminated all contractual liability between the parties but expressly preserved the rights of Liberty. The last paragraph of the release provided:
"It is expressly understood that this Release shall not affect, in any way, the rights of Liberty Mutual Fire Insurance Company in its claims for negligence against National Consolidated Warehouse, Inc., D.H.J. Facemate Corporation and The City of Chicopee, all as set forth in Civil Action No. 83-1039 and filed in the Hampden County Superior Court."
Liberty was not a party to the settlement between Mass. Mutual and the defendants. Following execution of the release, the parties filed their stipulation of dismissal. National and Facemate premised their motion to dismiss the instant case, i.e., the one earlier filed by Liberty, on the doctrine of res judicata.
Discussion. Liberty urges that its action against the defendants was not extinguished by the release and judgment in Mass. Mutual's case because the parties in that case knew *296 that Liberty was a subrogee of Mass. Mutual, that Liberty was not a party to the settlement agreement, and that, indeed, the parties to the settlement had taken pains to reserve Liberty's rights in the earlier action. Liberty also claims that there was a disputed issue of material fact as to the intent of the parties in executing the release that made summary judgment in this case inappropriate. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
We first apply the familiar standards that govern review of a motion for summary judgment. A party moving for summary judgment must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). Community Natl. Bank v. Dawes, 369 Mass. 550, 554 (1976). The judge "must consider `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' in determining whether summary judgment is appropriate. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974)." Madsen v. Erwin, 395 Mass. 715, 719 (1985). "Inferences from the evidentiary materials are to be drawn in the light most favorable to the party opposing the motion." Beatty v. NP Corp., 31 Mass. App. Ct. 606, 607-608 (1991), citing Attorney Gen. v. Bailey, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982).
We think that the plain language of the release leaves no room to dispute that the parties intended to preserve Liberty's claims against the defendants. When an insurer pays an insured's claim under its insurance contract, the insurer succeeds to any right of action the insured may have against the parties allegedly responsible for the loss. Stevens v. Stewart-Warner Speedometer Corp., 223 Mass. 44, 46 (1916). New England Gas & Elec. Assn. v. Ocean Acc. & Guar. Corp., 330 Mass. 640, 659 (1953). If an insurer has paid the insured for the entire loss, it may bring an action, either in its own name or as subrogee, on behalf of the insured against a third party whose wrongful act caused the loss. Travelers Ins. Co. v. Graye, 358 Mass. 238, 240-241 (1970). If, as *297 here, the insurer has partially reimbursed the insured for the loss, "both insurer and insured would be the real parties in interest with the insurer a subrogee to the extent of its payment." 16 Couch, Insurance § 61:26 (rev. ed. 1983). A subrogee stands in the shoes of the subrogor in whose name the action is brought. Harvard Trust Co. v. Racheotes, 337 Mass. 73, 75 (1958). Thus, the insurer's rights by subrogation are no greater than the rights of the insured. Home Owners' Loan Corp. v. Baker, 299 Mass. 158, 162 (1937).
The general rule is that a single negligent act causing damage to an individual "can be the basis of only one cause of action on his [or her] behalf which cannot be divided or split into ... separate suits, so that a recovery for part of the loss will bar a subsequent suit to recover for other elements of damage." 16 Couch, Insurance § 61:206. See Dwight v. Dwight, 371 Mass. 424, 427 (1976); Restatement (Second) of Judgments § 18(1) (1980). An exception to the rule exists, however, when a defendant expressly or impliedly "acquiesces" to the splitting of the claim. Restatement (Second) of Judgments § 26(1)(a). Thus, when a tortfeasor, aware of an insurer's rights, settles with the insured without the insurer's involvement, "the tortfeasor either waives his right to invoke or is estopped to rely upon the rule as a defense to an action by the nonconsenting insurer as subrogee. Under such circumstances the settlement is regarded as having been made subject to and with a reservation of the rights of the insurer, and the tortfeasor is deemed to have consented to a separation of the rights of the insured and the insurer, although such rights may originally have been part of a single indivisible cause of action." 16 Couch, Insurance § 61:206. See also Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 107 (2d Cir.1992) ("Where a third party obtains a release from an insured with knowledge ... of the existence of the insurer's subrogation rights, such a release does not bar the right of subrogation of the insurer"); Ocean Acc. & Guar. Corp. v. Hooker Electro-Chem. Co., 240 N.Y. 37, 47-48, 50 (1925) (same).
*298 Applying the above principles, we conclude that, once Liberty paid its insured, Mass. Mutual, for its loss, Liberty succeeded to the rights of Mass. Mutual against the defendants (to the extent of what Liberty paid out), who were allegedly responsible for the loss. Not only were the defendants in this case aware of Liberty's status as subrogee, but Mass. Mutual, at least, memorialized that status in so much of the release as reserved Liberty's rights. To be sure, National and Facemate did not sign the release, but the release was part of an over-all settlement to which National and Facemate did subscribe. The case falls well within the principles articulated in Restatement (Second) of Judgments § 26(1)(a), which not only appeal to a sense of equity but have the salutary effect of permitting settlements in cases where there are multiple sources of reimbursement.
Judgment reversed.
NOTES
[1] As subrogee of Massachusetts Mutual Life Insurance Company.
[2] D.H.J. Facemate Corporation.
[3] National is a wholly owned subsidiary of Facemate.
[4] On November 26, 1990, the city of Chicopee filed a motion for summary judgment which was allowed without opposition. It was not a party to the appeal.
[5] This action was docketed as Civil Action No. 83-1039.
[6] This action was docketed as Civil Action No. 83-1195.