Graham, J.
This dispute arises out of a fire in the leased premises of the defendant, Morgan Scott Sullivan (“Sullivan”), which is owned and operated by the landlord, Benny Renzella (“Renzella”). The plaintiff, SEACO Insurance Company (“SEACO”), stepped into the shoes of its insured, Renzella, and has filed this subrogation action against Sullivan to recover the money it paid to Renzella as a result of Sullivan’s negligence in starting the fire in the leased premises.
BACKGROUND
In May of 1987, Sullivan executed a written, three-year lease agreement with the landlord, Renzella, to rent 2,300 square feet of office space located at 883 Edgell Road in Framingham, Massachusetts, in exchange for a monthly lease payment of $ 1,917.00. This first lease covered the rental period from June 1, 1987 to May 31, 1988. The relevant portions of the parties’ lease are contained in the margin.[3]
By agreement, both parties extended the lease period from June 1, 1990toMay31, 1992 and then again from June 1, 1992 to May 31, 1993. Both extensions of the original lease contained language indicating that except as modified within the lease extensions, all other terms of the original lease shall remain in full force and effect through the term of the extension. At the end of the second extension, which expired on May 31, 1993, Sullivan remains a tenant of Renzella’s Nobscot Building without a written lease.
In or about September of 1997, Renzella reduced the area of Sullivan’s leased premises from approximately 2,300 square feet to 1,100 square feet and similarly, reduced Sullivan’s monthly rental fee from $1,917.00 to $1,000.00.
In the late evening or early morning of January 29, 1998 or January 30,1998, a fire occurred in Sullivan’s business after he closed the premises for the evening. The fire was confined to Sullivan’s rental premises, although other offices in the building sustained smoke and water damage. At the time of the fire, Sullivan did not have insurance and did not receive any compensation from any other source for damages to his merchandise and equipment.
As the insurance company for Nobscott Building, SEACO paid Renzella $33,442.51 for damages incurred by the fire. SEACO filed this action for subrogation against Sullivan for his negligence in starting the fire. Sullivan now moves for summary judgment.
DISCUSSION
Summary judgment is granted where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 713-14 (1991). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The Court decides any conflicts in the materials and all logical permissible inferences in favor of the non-moving party. See Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991).
When an insurer pays an insured’s claim under its insurance contract, the insurer succeeds to any right of action the insured may have against the parties allegedly responsible for the loss. New England Gas & Elec. Ass’n v. Ocean Acc. & Guar. Corp., 330 Mass. 640, 659 (1953). If an insurer has paid the insured for the *661 entire loss, it may bring an action, either in its own name or as subrogee, on behalf of the insured against a third party whose wrongful act caused the loss. Travelers Ins. Co. v. Graye, 358 Mass. 238, 240-41 (1970). A subrogee stands in the shoes of the subrogor in whose name the action is brought. Harvard Trust Co. v. Racheotes, 337 Mass. 73, 75 (1958). Thus, the insurer’s rights by subrogation are no greater than the rights of the insured. Home Owners’ Loan Corp. v. Baker, 299 Mass. 158, 162 (1937). Additionally, “(t]he interpretation of a written contract or lease is a question of law, not of fact” which is decided by the Court. Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992).
A.Terms of the Lease
Sullivan contends that he is entitled to summary judgment because, although the parties’ written lease expired in 1993, he claims that as a tenant-at-will, all of the original lease terms remained in effect unless expressly modified by both parties. Therefore, he argues that the clause prohibiting subrogation by either parties’ insurance company precludes SEACO from bringing this action. SEACO, however, contends that the terms of the original lease no longer apply and thus, the provision prohibiting subrogation is inapplicable.
It is well settled that a tenant who holds over after the end of a written lease is a tenant-at-sufferance. Staples v. Collins, 321 Mass. 449, 451 (1947). The tenant-at-sufferance changes into a tenancy-at-will when the lessee pays, and the landlord accepts, a rental fee for the leased premises. Id.; see also Howard v. Merriam, 5 Cush. 562, 571 (1850). The Court has stated that “in holding over after the expiration of a written lease, [the tenant] holds the premises as a tenant-at-will, according to the terms of the written lease, in the absence of a new agreement.” Boudreau v. Johnson, 241 Mass. 12, 16 (1922). Further,
[u]pon the termination of the written lease, the occupancy did not cease, but the relation of landlord and tenant continued, . . . the only difference being that, instead of being in under a written lease and for a fixed term, they were in by parole and as tenants at will. In holding over whether by mutual consent and agreement or otherwise they held the same premises with all the rights and privileges that had been annexed to them, and upon the terms and conditions specified in the written lease, except so far as modified by mutual arrangement.
Walker Ice Co. v. Am. Steel & Wire Co., 185 Mass. 463, 467 (1904).
When the third lease expired in 1993, Sullivan became a tenant-at-sufferance, which quickly converted into a tenant-at-will when Sullivan paid and Renzella accepted Sullivan’s next month’s rental check. By accepting Sullivan’s rental payments, all of the terms and conditions specified in the original written lease continued for the next month period. Id. All of the terms and conditions of the original lease continued every time Renzella accepted the next month’s rental payment.[4]Therefore, in September of 1997, when both parties agreed to modify the number of square feet Sullivan rented and the total monthly rental fee, the original terms of those two provisions were no longer part of the tenancy. However, even though the parties modified the size and price of the rental premises after the original lease expired, all other terms and conditions in the original lease continued. See Wit v. Commercial Hotel Co., 253 Mass. 564, 570 (1925). Included in the lease terms after September of 1997 was the provisions requiring Sullivan to insure his own property in the leased premises, maintain adequate insurance coverage which indemnifies the landlord, and the prohibition of the parties’ respective insurance companies to subrogate claims. Although the lease provision prohibiting subrogation applies, that does not end the inquiiy on the issue of whether SEACO may maintain this action against Sullivan.
B.Dependent Lease Provisions
Sullivan contends that SEACO may not bring this subrogation action even though he breached Section 1 of Article 10, by failing to maintain sufficient insurance on his equipment and property in the leased premises, because the provisions of Section 1 of Article 10 and Section 2 of Article 10 are independent, not dependent of one another as alleged by SEACO.
The Court finds that the clause prohibiting subrogation by the respective insurance companies is dependent on both parties maintaining insurance coverage. Therefore, SEACO is not precluded from bringing this subrogation claim against Sullivan to recover the money it paid out to Renzella as a result of the fire in Sullivan’s business. Sullivan is correct in arguing that Section 1 of Article 10 requires him to insure his fixtures, merchandise and equipment insured against loss or damage by fire, and that his failure to do so resulted in a great financial loss to him. However, his failure to maintain insurance coverage prohibits him from now claiming protection under the subrogation prohibition in Article 10, Section 2. The subrogation clause is dependent on the requirement that both Renzella and Sullivan maintained proper insurance coverage. The failure of Sullivan to maintain liability insurance prohibits him from claiming the protection of the clause now.
Further, had Sullivan maintained his liability insurance coverage, as required by the terms of the lease, it may not have been necessary for SEACO to commence this action. Had Sullivan been adequately insured, his insurance policy would have covered the loss and paid Renzella for the damage to the building.
C.Co-Insured
Sullivan also avers that he is entitled to summary judgment because, as an insured of SEACO, SEACO is prohibited from recovering by means of subrogation against its own insured. Sullivan argues that the *662 terms of the original lease require him only to provide insurance coverage for losses of his personal property, thus Sullivan alleges that Renzella is responsible for all other property damages, including damage by fire. Therefore, Sullivan argues that since SEACO is insuring both Renzella and Sullivan, SEACO is prohibited from bringing this subrogation action against him.
Sullivan cites three cases to support the proposition that he is entitled to summary judgment as a matter of law because he is a co-insured of SEACO. The Court finds that none of these cases offer support for Sullivan’s contention.
In Peterson, the Court held that a residential tenant could not be held liable on a subrogation claim brought by a landlord’s insurer when no express provision of the lease established the tenant’s liability for negligently starting fires. Peterson v. Silva, 428 Mass. 751, 753 (1999). The Court stated that the landlord’s insurance coverage is presumed to be held for the mutual benefit of the landlord and the tenant, absent any provision to the contrary. Id. That finding is consistent with public policy arguments that a residential tenant is covered by the landlord’s insurance policy. Here, however, Sullivan is a commercial tenant who is treated differently from a residential tenant. Further, two express provisions in the lease (Article 8 and 10) expressly required Sullivan to maintain his own insurance policy which indemnifies the landlord “against all claims of whatever nature arising from any act, omission or negligence of the Tenant. . .” Therefore, the Peterson case provides no support to Sullivan.
In Lumbermen's Mut Ins. Co., the defendant was required to pay a rent adjustment of fifiy-six percent of the operating expenses which included hazard and liability insurance “on the whole of the premises of which the leased premises are a part.” Lumbermen’s Mut. Ins. Co. v. Zoltek Corp., 419 Mass. 704, 706 (1995). Based on this arrangement, the Court found the landlord and tenant to be co-insured and precluded the plaintiff from seeking recovery against the tenant. Id. at 706. In this case, however, the landlord did not require Sullivan to pay a percentage of the landlord’s insurance cost. Rather, the express terms of the lease required Sullivan to maintain his own insurance policy which indemnifies the landlord. Therefore, the facts of Lumbermen’s Mut Ins. Co. also do not provide support for Sullivan’s argument as a co-insured.
The third case cited by Sullivan, for the proposition that he is a co-insured of SEACO, is Lexington Ins. Co. v. All Regions Chem. Labs, Inc., 419 Mass. 712 (1995). In that case, the Court held that a yield-up clause in a lease shielded the tenant from contractual liability to the lessor for fire loss or damage caused by negligence. Id. at 714. A yield-up clause provides in “pertinent part that at the expiration of the lease [the tenant] will ‘peacefully yield up the Demised Premises..., in the same condition and repair as the same were in at the commencement of the term . . ., damage by fire or other casualty . . . only excepted.’ ” Id. at 713 (emphasis added). Here, however, no yield-up clause was included in the original lease, therefore, the facts of Lexington Ins. Co. do not provide support for Sullivan’s argument either.
Sullivan failed to prove he is a co-insured of SEACO and that he is entitled to judgment as a matter of law. Rather, SEACO has proven that the terms of the original lease required Sullivan to maintain his own insurance which would indemnify the landlord, thus precludes Sullivan from claiming to be a co-insured of SEACO. Therefore, summary judgment in favor of SEACO is appropriate.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s motion for summary judgment be DENIED. Further, the Court ORDERS that summary judgment be ALLOWED in favor of the plaintiff for damages in the amount of $33,442.51.

“Section 1 [of Article 8]. The Tenant agrees to indemnify and save harmless the Landlord from and against all claims of whatever nature arising from any act, omission or negligence of the Tenant...”
“Section 2 [of Article 8]. The Tenant agrees to maintain in full force, during the term hereof, a policy of public liability and property damage insurance under which the Landlord , . . are named as insured . . .”
“Section 1 [of Article 10]. Tenant agrees that it shall keep its fixtures, merchandise and equipment insured against loss or damage by fire with the usual extended coverage endorsements. It is understood and agreed that the Tenant assumes all risk of damage to its own property arising from any cause whatsoever, including, without limitation, loss by theft or otherwise.”
“Section 2 [of Article 10]. Insofar as and to the extent that the following provision may be effective without invalidating or making it impossible to secure insurance coverage obtainable from responsible insurance companies doing business in the area (even though extra premium may result therefrom) the Landlord and Tenant mutually agree that with respect to any loss which is covered by insurance then being carried by them respectively, the one carrying such insurance and suffering said loss, releases the other of and from any and all claims with respect to such loss; and they further mutually agree that their respective insurance companies shall have no right of subrogation against the other on account thereof.”
“Section 4 [of Article 15]. Each term and each provision of this Lease to be performed by the Tenant or the Landlord shall be construed to be both a covenant and a condition.”
Articles 8, 10 & 15 of the Lease between Renzella and Sullivan.

SEACO’s argument that the enforcement of the terms of the lease after its expiration is prohibited, because there is no writing to satisfy the statute of fraud, is without merit. The statute of fraud mandates that a writing reflect the intention of the parties concerning real estate when the lease is for more than a year. See Novel Iron Works, Inc. v. Wexler Const. Co., Inc., 26 Mass.App.Ct. 401, 411 (1988). Here, however, after the lease expired in 1993, Renzella created a tenancy-at-will each month he accepted Sullivan’s monthly rental payment check. The terms of the original lease, except the provisions modified by the parties, continued and rolled over each month *663 into the new tenancy. No writing is needed to satisfy the statute of fraud for a month-to-month tenancy.