van Gestel, Allan, J.
This matter is before the Court on the “Motion of the Third-Party Defendant, J.F. White Contracting Co., Inc. (“J.F. White”] for Summary Judgment” (Paper #106), on the claims against it in Count II of the third-party complaint and on the cross claim of the third-party defendant STV, Inc. (“STV”). It is also here on “STV, Inc.’s Motion for Summary Judgment Against Builders’ Risk Insurers” (Paper #107). What is involved, among other things, is the interplay between rights of subrogation and the doctrine of relation back of claims for statute of limitations purposes.

BACKGROUND

The facts are not in dispute. The original complaint was filed on November 16, 2001.
There the plaintiffs, made up of a number of contractors and the owners/managers of the Central Artery/Tunnel Project (“CA/T,” also sometimes known colloquially as the “Big Dig”), brought suit against four jointly-acting insurance carriers (herein called the “Insurers”). The Insurers issued a Manuscript Builders’ Risk policy (the “Policy”) insuring the CA/T project from March 12, 1992 to April 30, 2001. The essence of the original complaint was that the Insurers breached their contract as to several claims by various of the insured contractor/plaintiffs by failing to honor claims under the Policy.
*191 J.F. White and STV were added as defendants in this case by an amendment to the complaint (Paper #18.1), filed on July 30, 2002. The amendment contained two new counts, numbered XXII and XXIII, against J.F. White, and one new count, numbered XXIV, against STV, each by Kiewit/Atkinson/Cashman, Joint Venture (“K/A/C"), one of the several plaintiffs. Neither J.F. White nor STV, in their individual capacities, were parties to this action before the July 30, 2002 amendment to the complaint.
Count XXII of the complaint, as amended, charged J.F. White with “carelessly and negligently creat(ing) and/or caus(ing) a condition on its construction site which resulted in flooding and other damage at the .. . work site of K/A/C" thereby causing “damage to K/A/C’s equipment and property, damage to its work site, damage to K/A/C’s business, lost profits and business interruption."
Count XXIII charged J.F. White with “negligence and unreasonable conduct [that] caused and/or created a condition on its work site which constituted a nuisance” which was the “proximate cause of damage to K/A/C,” resulting in damage to K/A/C’s “equipment and property, damage to its work site, damage to K/A/C’s business, lost profits and business interruption.”
The acts of J.F. White of which K/A/C complained occurred in May 1999, more than three years before the claims in the amended complaint were filed.
Count XXIV of the amended complaint charged STV with “carelessly and negligently perform[ing]” “design, engineering, and other services in connection with construction work” which “was the proximate cause of damage” to K/A/C’s “equipment and property, damage to its work site, damage to K/A/C’s business, lost profits and business interruption.”
The acts of STV of which K/A/C complained also occurred in May 1999, more than three years before the claims in the amended complaint were filed.
Also on July 30, 2002, the Insurers filed a third-party complaint (Paper #18), against, among others, J.F. White and STV. In Count II of the Insurers’ third-party complaint, they seek a declaratory judgment as to whether ”[i]f the Court determines that there is coverage under the Policy for the Plaintiff [K/A/C’s] claim, which they deny, then the [Insurers] demand judgment against [STV and J.F. White] for all sums which the . . . Insurers are required to pay to [K/A/C].”
At the time of the Insurers’ filing of their third-parly complaint, they had paid nothing to K/A/C in connection with the May 1999 events for which K/A/C had sued J.F. White or STV.
On December 19, 2002, this Court, at the request of the parties, issued an Order severing Counts XXII, XXIII and XXTV from the remaining counts of the amended complaint, “for all purposes, including discovery and trial.” The reasoning behind the Court’s action, and the moving parties’ request for severance, was that these counts were distinct from the remaining counts of the amended complaint. These counts were direct claims by K/A/C against alleged tortfeasors J.F. White and STV, whereas the remaining counts were against the Insurers over insurance coverage under the Policy.
After severance, the Court established a separate Special Tracking Order for the direct claims against J.F. White and STV. See Paper #59.
In July of 2003 a settlement was reached between the Insurers and the claimants, including K/A/C, on the various claims under the Policy in the underlying amended complaint. As a result, the claims against the Insurers were dismissed by agreement.
Section 3 of the Settlement Agreement and Mutual Release between the Insurers and K/A/C provides that the “Insurers retain their rights to subrogation pursuant to the terms of the Policy against . . . J.F. White Contracting Company, Inc., and STV, Inc . . .” Neither J.F. White nor STV were parties to this Settlement Agreement and Mutual Release.
Thereafter, J.F. White and STV filed motions for summary judgment on the claims against them in the amended complaint. On August 10, 2004, this Court allowed J.F. White’s motion for summary judgment, and on September 15, 2004, the motion of STV was allowed for the same legal reasons.
In its memorandum and order on J.F. White’s motion for summary judgment, this Court explained its reasoning as follows:
There is no dispute over the fact that the claims in Counts XXII and XXIII against J.F. White are tort-based claims for which three-year statutes of limitations apply. See G.L.c. 260, secs. 2A and 2B. In tort actions the cause of action accrues for limitations purposes at the time the plaintiff is injured. Stark v. Advanced Magnetics, Inc., 50 Mass.App.Ct. 226, 232 (2000). Thus, unless the relation back provisions of G.L.c. 231, sec. 51 and Mass.R.Civ.P. Rule 15(c) apply, the claims against J.F. White are barred by the statute of limitations.
G.L.c. 231, sec. 51 permits amendments adding parties “which may enable the plaintiff to sustain the action for the cause or for recovery for the injury for which the action was intended to be brought” and makes any amendment “relate to the original pleading.”
Mass.R.Civ.P. Rule 15(c) provides similar, but not identical, language: “Whenever the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading.”
*192 Recently, the SJC recited the ordinary approach to relation-back issues. Justice Sosman said:
Ordinarily, we would look to our own rules of civil procedure to determine the date on which an action is “commenced," and, under the straightforward provisions of those rules, we would find that amended pleadings adding or substituting a party, where the claims asserted against the new party arise out of the same conduct, transaction, or occurrence set forth in the original pleading, “relate! ] back” to the date of the original pleading. See Mass.R.Civ.P. 15(c).
Nett v. Bellucci, 437 Mass. 630, 635 (2002).
The claims asserted here against J.F. White arise out of its alleged negligence, on two occasions, causing flooding conditions that resulted in damages to K/A/C. The conduct was some negligent act or acts.
The claims asserted here against the original insurance carrier defendants arise out of their alleged breach of a contract of insurance when they failed to honor, among others, claims for damages to K/A/C resulting from the flooding attributed to the negligence of J.F. White.
After acknowledging Massachusetts’s long-held “liberal policy allowing amendments which add or substitute parties after the statute of limitations has expired,” the SJC made the following clear statement:
Our cases have not, however, permitted an amendment to relate back to the date of commencement of the action when, as here, the amendment seeks to add a new defendant after the statute of limitations has run and to allege against that new defendant a theory of liability wholly different from the theory of liability of the original complaint. A proper reading of rule 15(c) leads to the same result.
Bengar v. Clark Equipment Co., 401 Mass. 554, 556-57 (1988).
In Bengar the plaintiff sustained personal injuries when a forklift he was driving rolled over. Bengar sued the owner and operator of an oncoming vehicle which he said caused him to swerve and the forklift to roll over, resulting in his injury. After the running of the statute of limitations, Bengar sought to join the manufacturer of the forklift, alleging product liability and breach of warranty claims. Bengar’s injuries, like K/A/C’s damages here, arose when the forklift rolled over. The SJC ruled, however, that the claim for negligence against the owner and operator of the oncoming vehicle resulting in Bengar’s injuries was a wholly different claim than the product liability/breach of warranty claims against the forklift manufacturer resulting in the very same injuries.
The Appeals Court in Christopher v. Duffy, 28 Mass.App.Ct. 780, 785 (1990), ruled essentially the same way. See also, Wood v. Jaeger-Sikes, Inc., 27 Mass.App.Ct. 199, 202-03 (1989).
the present case there are presented breach of contract claims against insurance carriers for fail-to provide coverage for allegedly covered losses a Manuscript Builder’s Risk Policy, and then there is added J.F. White as a new defendant charged with negligence and nuisance causing damages to one of the plaintiffs arising out of two the allegedly covered events. These are wholly different claims. Consequently, there should be no relating back and the statute of limitations bar is applicable.
The Insurers sought clarification as to whether the summary judgment decisions in favor of J.F. White and STV applied to their subrogation claims. This Court responded:
What was addressed was what was before the Court — motions by J.F. White and STV for summary judgment on claims brought by K/A/C. Whether K/A/C, at the time those motions were heard, was acting in its own capacity, or by then had subrogated its claims against J.F. White and STV to the Insurers and the Insurers were acting in a subrogated capacity, but using K/A/C’s name, is not within the knowledge of the Court, but certainly is within the knowledge of the Insurers and K/A/C.
In a footnote to the foregoing, the Court noted:
The Court observes the comments in the status report of the Insurers filed on October 8, 2004, that in “July 2003, K/A/C entered into a settlement agreement with the Builder’s Risk Insurers” and “(u]nder the terms of the settlement agreement, the Builder’s Risk Insurers expressly retained their rights to subrogation against J.F. White, STV, and other responsible parties, in connection with the flooding incidents caused by J.F. White.” These comments do not aid the Court in its response to the request for clarification. They do point out, however, that the parties, and not the Court, are in a far better position to know where they stand.
This is the posture in which J.F. White and STV have each moved for summary judgment against the Insurers’ claims in subrogation against them.

DISCUSSION

“Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.” M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004). Mass.R.Civ.P. Rule 56(c).
The moving parties — J.F. White and STV — bear the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Here, they have satisfied their burden.
*193 J.F. White cites to three grounds in support of its motion. STV joins in the first two grounds. They are: (1) that the Court’s ruling that K/A/C’s tort claims are barred by the statute of limitations precludes the Insurers’ subrogation claims; (2) that the claims are barred by the economic loss doctrine; and (3) that J.F. White is a named insured under the Policy which prevents a subrogation claim against it. The Court will discuss the three claims in the order stated.

Statute of Limitations as a Bar to the Subrogation Claims

As noted above, when dealing with the claims of K/A/C, this Court concluded that the statute of limitations was a bar because there was no proper basis for any relation back to the original filing of the complaint. This was because the original claims against the Insurers on the Builders’ Risk Policy were wholly different from the direct claims by K/A/C against J.F. White and STV. That is the law of this case, and even if it were not, this Court sees no legal reason to change it in any way.
This then leads to an assessment of the Insurers’ position as subrogees of K/A/C.
When an insurer pays an insured’s claim under a policy, the insurer succeeds to any right of action the insured may have against parties allegedly responsible for the loss. New England Gas & Electric Association v. Ocean Accident & Guaranty Corp., 330 Mass. 640, 659 (1953). The insurer may bring an action, either in its own name or as subrogee, on behalf of the insured against a third party whose wrongful act may have caused the loss. Travelers Ins. Co. v. Graye, 358 Mass. 238, 240-41 (1970). The subrogated insurer stands in the shoes of the subrogor/insured in whose name the action is brought. Harvard Trust Co. v. Racheotes, 337 Mass. 73, 75 (1958). The insurer’s rights by subrogation are no greater than the rights of the insured. Home Owners’ Loan Corp. v. Baker, 299 Mass. 158, 162 (1937).
If the Insurers must stand in the shoes of K/A/C here, they certainly can have no claims greater than K/A/C. Their position is not — as they argue — one that arises from the Policy. Rather, their rights are those of their insured. Thus, relation back is not any more available to the Insurers than it was to K/A/C. Indeed, it would seem to twist the law strangely to suggest that the Insurers, who have no connection with J.F. White and STV, have greater rights against them than K/A/C.
The Insurers cite to Liberty Mutual Ins. Co. v. National Consolidated Warehouses, Inc., 34 Mass.App.Ct. 293 (1993), as a way out of their dilemma. Liberty, however, is clearly distinguishable from the situation here.
In Liberty, the insurer had paid the full policy amount to its insured before the insured sued the alleged third-parly tortfeasor. The insurer then sued the third party. Thereafter, the insured also sued the third party. Then the insured and the third party settled their case and a release was executed by the insured running to the third party. That release specifically carved out Liberty Mutual’s subrogation claim against the third party. This was the situation in which the Appeals Court concluded that Liberty Mutual’s subrogation rights were not lost.
Justice Ireland explained the reasoning in Liberty, at p. 297, as follows:
The general rule is that a single negligent act causing damage to an individual “can be the basis of only one cause of action on his [or her] behalf which cannot be divided or split into . . . separate suits, so that a recovery for part of the loss will bar a subsequent suit to recover for other elements of damage.” 16 Couch, Insurance §61:206. See Dwight v. Dwight, 371 Mass. 424, 427 (1976); Restatement (Second) of Judgments §18(1) (1980). An exception to the rule exists, however, when a defendant expressly or impliedly “acquiesces” to the splitting of the claim. Restatement (Second) of Judgments §26(l)(a). Thus, when a tortfeasor, aware of an insurer’s rights, settles with the insured without the insurer’s involvement, “the tortfeasor either waives his right to invoke or is estopped to rely upon the rule as a defense to an action by the nonconsenting insurer as subrogee. Under such circumstances the settlement is regarded as having been made subject to and with a reservation of the rights of the insurer, and the tortfeasor is deemed to have consented to a separation of the rights of the insured and the insurer, although such rights may originally have been part of a single indivisible cause of action.” 16 Couch, Insurance §61:206. See also Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 107 (2d Cir. 1992) (“Where a third party obtains a release from an insured with knowledge .. . of the existence of the insurer’s subrogation rights, such a release does not bar the right of subrogation of the insurer”); Ocean Acc. & Guar. Corp. v. Hooker Electro-Chem. Co., 240 N.Y. 37, 47-48, 50 (1925) (same).
In contrast here, the Insurers’ subrogation rights did not arise until the Insurers made their payments to K/A/C. Those payments, presumably, were after the settlement with K/A/C in July of 2003. By this time, K/A/C’s claims against J.F. White and STV were already barred by the statutes of limitations applicable thereto.
Further, neither J.F. White nor STV entered into any settlement with K/A/C, nor did they accept any release therefrom, including any preservation of the Insurers’ subrogation rights against them. Rather, they fought the full claims brought by K/A/C against them to a successful finish by way of summary judgment. There was no acquiescence by J.F. White or STV *194 to the preservation of the Insurers’ subrogation claims.
There is nothing in the situations before it that appeals to any sense of equity by this Court running in favor of the Insurers. See Liberty, supra, 34 Mass.App.Ct. at 298.

The Effect of the Economic Loss Doctrine

J.F. White and STV argue further that the economic loss doctrine bars the Insurers’ subrogated claims. “[Wfhen a defendant interferes with a contract or economic opportunity due to negligence and causes harm to either person or property of the plaintiff, the plaintiff may not recover for purely economic losses.” Garweth v. Boston Edison Co., 415 Mass. 303, 306 (1993). Certainly, there are aspects of K/A/C’s claims, as now subrogated to the Insurers, that fall squarely within the economic loss doctrine. Those are the claims for damage to the work site, damage to K/A/C’s business, lost profits and business interruption. See Barber Lines A/S v. MN Donau Maru, 764 F.2d 50, 53 (1st Cir. 1985), citing Cattle v. The Stockton Water Works Co., L.R. 10 Q.B. 453, 33 Law Times 475 (1875).
At the same time, however, there also appear to be claims for damage to K/A/C’s equipment and property. While in the overall this damage may be relatively minor in dollar amount in comparison to that for damage to business, lost profits and business interuption, it is enough to prevent summary judgment. See, e.g., Priority Finishing Corp. v. LAL Construction Co., Inc., 40 Mass.App.Ct. 719, 721 (1996).
Neither summary judgment motion can prevail on the economic loss doctrine argument.

J.F. White as a Named Insured

Lastly, J.F. White contends that it is a named insured under the Policy and, therefore, subrogation cannot be applied against it. See Peterson u. Silva, 428 Mass. 751, 742 (1999). J.F. White points to its inclusion in the joint venture Slattery/Interbeton/J.F. WTiite/Perini, Joint Venture, a named plaintiff in this case. Indeed, the Insurers, in paragraph 28 of their answer, admit that J.F. White, as a participant in the Slattery /Interbeton/J.F. White/Perini Joint Venture, was an “additional Named Insured” under the Policy.
The Insurers point out that when J.F. "White allegedly caused the damage involved in this case, it was not working on the CA/T Project. Rather, it was working on an adjacent site under contract with the MBTA. Therefore, the Insurers argue, J.F. White was not insured under the Policy for the acts with which it is charged in this case.
On the facts presented, this is not an easy issue. The protection for J.F. White against a subrogation claim relating to damages to K/A/C on the CA/T Project does not shelter it for negligence on another project, insured by another carrier, just because the damage was caused to a participant on the CA/T Project. At the same time, Silva seems to teach that a party in some ums for a policy cannot be the subject of a subrogated claim by the insurer for damage covered under the policy, even if the party paying part of the premiums is the cause of the damage. Silva, supra, 428 Mass. at 754.
Here, even more so than in Silva, J.F. White clearly was among those contributing to the premiums for the Insurers’ Policy. Certainly, then, it would be within J.F. White’s expectations that damages to CA/T Project property on which it was an insured would be covered by the policy it paid for.
This arguement provides an additional ground in support of J.F. White on the present motion.

ORDER

For the foregoing reasons, the “Motion of the Third-Party Defendant, J.F. White Contracting Co., Inc. (“J.F. White”] for Summary Judgment,” (Paper #106), and “STV, Inc.’s Motion for Summary Judgment Against Builders’ Risk Insurers,” (Paper #107), are each ALLOWED.
The parties are requested to advise the Court whether there remain any other claims still unresolved in this case. If the Court does not hear, in writing, as to this request by November 7, 2005, a final judgment shall be entered consistent with the foregoing ruling.