Hogan, Maureen B., J.
On November 26, 2003, American Insurance Company (“AIC”), as subrogee for Rogers Street, LLC, a/k/a Lyme Properties (“Lyme”), filed a subrogation action against Siena Construction Corporation (“Siena”), American Plumbing & Heating Corporation (“APHC”), and several other defendants not involved in the present motion, seeking property damages which arose from an explosion that occurred on the fourth floor of Lyme’s building, which it had rented to Microbia, Inc. (“Microbia”) (“the AIC Action”). On February 18, 2004, Great Northern Insurance Company (“Great Northern”), as subrogee for Micro-bia, filed another subrogation action against Siena, APHC, and several other defendants not involved in the present motion, seeking property damages which arose from the same explosion (“the Great Northern Action”).
On January 26, 2007, Siena and APHC filed a joint motion seeking leave of the court to amend their answers and add Microbia as a third-party defendant in both subrogation actions, pursuant to Mass.R.Civ.P. 14(a) and 15. Microbia, AIC, and Great Northern oppose Siena and APHC’s motion. For the reasons discussed below, Siena and APHC’s motion is DENIED.
BACKGROUND
Lyme leased the fourth floor of a commercial building to Microbia, an entrepreneurial pharmaceutical company. As part of the lease agreement, Lyme promised to outfit the fourth floor with certain improvements to suit Microbia’s business purposes. These improvements included the installation of a “cold room" with gas turrets, which provided the cold room with natural gas. The improvements were to be completed before Microbia moved into the building and the lease was to commence on Januaiy 8, 2002.
The lease agreement also provided that both Lyme and Microbia waive “any and every claim for recovery from the other for any and all loss of or damage to the Property or any part of it, or to any of its contents to the extent that such loss or damage is covered by valid and collectible property insurance.” AIC provided Lyme’s property insurance for the building, while Great Northern provided Microbia’s property insurance for the fourth floor.
Lyme hired several parties to complete the improvements to the fourth floor, including Siena, the general contractor for the project, and APHC, a plumbing subcontractor. After the improvements were completed, but before Microbia moved into the building, Microbia hired Eagle Building Services Corporation (“Eagle”), a professional maintenance company, to clean the fourth floor.[5] On July 15, 2002, while Eagle was performing the cleaning service, the natural gas supplied to the cold room somehow ignited, causing an explosion that severely injured Carlos Figueroa, Jr. (“Figueroa”), an Eagle employee.
*253 Figueroa filed lawsuits against several defendants on February 19, 2003, which included Siena and APHC (“the Figueroa Action”). On September 5, 2003, Siena and APHC filed a third-party complaint for contribution against Microbia in the Figueroa Action, alleging that Microbia failed to exercise control over the fourth floor and failed to maintain the fourth floor in a safe condition. After Siena and APHC filed this third-party complaint, Figueroa asserted a direct claim against Microbia.
Lyme filed an insurance claim with AIC to recover property damages resulting from the explosion. AIC paid Lyme’s claim and on November 26, 2003, instituted the AIC Action, a subrogation action against Siena and APHC, and several other defendants. AIC did not, however, include Microbia as a defendant in its subrogation action, as Figueroa did in his action for personal injuries. Microbia, also suffering property damages, filed a claim with Great Northern under its policy. Great Northern paid Microbia’s claim and on February 18, 2004, instituted the Great Northern Action, its own subrogation action against several defendants, including Siena and APHC. Until the present motion before the court, Siena and APHC had not attempted to assert a third-party complaint against Microbia in either subrogation action, as they had in the Figueroa Action for personal injuries.
On December 2, 2004, this court (Neel, J.) consolidated the Figueroa Action with the AIC Action and the Great Northern Action for discovery purposes only. In November of 2006, all parties agreed to mediate all claims in the three actions. The parties settled Figueroa’s personal injury claims on the first day of mediation. Microbia participated in the mediation and contributed to this settlement. When the mediation turned to the settlement of the two subrogation actions, however, Siena and APHC (both represented by the same counsel) refused to reach a settlement.
Thereafter, Siena and APHC filed a joint motion on January 26, 2007 pursuant to Mass.R.Civ.P. 14(a) and 15, seeking leave of the court to amend their answers and bring third-party claims against Microbia as a third-party defendant in both subrogation actions. The proposed third-party complaints include claims against Microbia for contribution and indemnification.
DISCUSSION
Mass.R.Civ.P. 15(a) provides that a court should grant leave to amend pleadings “freely. .. when justice so requires.’’ Sharon v. Newton, 437 Mass. 99, 102 (2002). Indeed, “Massachusetts has long had a liberal policy allowing amendments which add or substitute parties after the statute of limitations has expired.” Bengar v. Clark Equip. Co., 401 Mass. 554, 556 (1988), citing Wadsworth v. Boston Gas Co., 352 Mass. 86, 88 (1967) (“[T]he law in this Commonwealth with respect to amendments is more liberal than elsewhere”).
The decision whether to grant a motion to amend is within the discretion of the judge, but leave should be granted unless there are good reasons for denying the motion. Such reasons include “undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.”
Mathis v. Massachusetts Elec. Co., 409 Mass. 256, 264 (1991) (emphasis added) (motion to amend denied for undue delay where plaintiff, offering no reason, moved to amend more than four years after filing complaint).
Here, Microbia, Great Northern, and AIC argue that Siena and APHC’s motion should be denied for two reasons. First, the parties claim that Siena and APHC’s failure to file the third-parly complaints until January 26, 2007, approximately three years after the time AIC and Great Northern filed the two subrogation actions, constitutes an undue delay, and if allowed, would prejudice Microbia, Great Northern, and AIC. Second, they argue that even if the motion was timely, because Siena and APHC’s contribution and indemnification claims against Microbia would fail, the amendment is futile. Upon consideration, the court finds that Siena and APHC unduly delayed seeking to amend their answers to assert third-party claims against Microbia in both the AIC Action and the Great Northern Action, that allowing such amendment at this time would unduly prejudice Microbia, and that the proposed amendments adding third-party claims against Micro-bia are futile.
I. Undue Delay and Prejudice
On September 3, 2003, in defending against Figueroa’s personal injury claims, Sienna and APHC filed a third-party complaint in the Figueroa Action, asserting contribution claims against Microbia, which alleged that Microbia was negligent in failing to exercise control over the fourth floor and to maintain it in a safe condition. The claims Sienna and APHC now seek to bring against Microbia in the two subrogation actions are based upon the same negligence theory of liability. As their third-parly complaint in the Figueroa Action reveals, Sienna and APHC knew of their potential claims against Microbia arising out of the gas explosion over three years prior to bringing the instant motion seeking to assert the same claims in these two subrogation actions. When Sienna and APHC answered the complaint in the AIC action, filed on November 26, 2003, and the complaint in the Great Northern Action, filed on February 18, 2004, they did not assert third-party claims against Microbia despite their knowledge of such potential claims. Sienna and APHC do not offer any good reason for their failure to seek to bring these claims against Microbia earlier or for the three-year delay.
Allowing Sienna and APHC to now bring these third-party claims against Microbia after Microbia has joined in the settlement of Figueroa’s personal injury *254 claims, would unduly prejudice Microbia. When Microbia joined in the settlement of Figueroa’s claims, those claims were the only claims asserted against it in these actions. If Microbia had known that Sienna and APHC intended to bring third-party claims against it in the subrogation actions for property damage, Microbia may not have agreed to settle the Figueroa Action or may have insisted on a global settlement of all claims against it. Allowing Sienna and APHC to wait to assert these claims against Microbia after the actions have been pending for three years and only after Sienna and APHC benefitted from Microbia’s participation in the settlement of the personal injury claims, would unfairly prejudice Microbia.
Accordingly, because of such undue delay by Sienna and APHC and the prejudice to Microbia that would result from such amendment, Sienna and APHC’s joint motion for leave to file third-party complaint against Microbia, Inc. in the consolidated cases is denied.
II. Futility of the Amendment
In the third-party complaints that Sienna and APHC seek to bring in the AIC Action and the Great Northern Action, they assert claims for contribution and indemnification against Microbia for its alleged negligence in failing to maintain the fourth floor in a safe condition, in failing to exercise control over the fourth floor, and in failing to supervise Eagle, the company hired to clean the fourth floor. Upon examination of these claims, the court finds that allowing Sienna and APHC to amend to bring these third-parly claims against Microbia would be futile. Accordingly, the court denies Sienna and APHC’s motion to amend on this additional ground.
A. Contribution Claims
Under G.L.c. 23IB, §l(a), contribution is available between joint tortfeasors, “where two or more persons become jointly liable in tort for the same injury to person or property . . .” G.L.c. 23IB, §l(a). “The language of this statute requires that the potential contributor be directly liable to the plaintiff.” Liberty Mut. Ins. Co. v. Westerlind, 374 Mass. 524, 526 (1978) (emphasis added). Thus, Siena and APHC would have viable third-parly claims against Microbia for contribution only if they could demonstrate that Microbia would be directly liable for all or part of the subrogation claims asserted against Siena and APHC in the Great Northern Action and the AIC Action.
1. The Great Northern Action
Great Northern, Microbia’s insurer, paid Microbia’s claim for property damage arising out of the gas explosion, and then brought suit, as subrogee of Microbia, against Sienna and APHC. “When an insurer pays an insured’s claim under its insurance contract, the insurer succeeds to any right of action the insured may have against the parties allegedly responsible for the loss ... A subrogee [Great Northern] stands in the shoes of the subrogor [Microbia] in whose name the action is brought. Thus, the insurer’s rights by subrogation are no greater than the rights of the insured.” Liberty Mut Ins. Co. v. Nat'l Consol. Warehouses, Inc., 34 Mass.App.Ct. 293, 296-97 (1993) (emphasis added). In the Great Northern Action, therefore, Great Northern stands in the shoes of Microbia and is entitled to assert all the claims that Microbia may have against Sienna and APHC. Sienna and APHC may defend against those claims by asserting any defenses that they would have against Microbia. NipponKoa Ins. Co., Ltd v. Ozark Motor Lines, Inc., 2006 WL 2947467 *4 (M.D.Tenn. 2006). Siena and APHC, therefore, properly asserted the affirmative defense of comparative negligence in their answers in the two subrogation actions.[6]
Sienna and APHC, however, cannot obtain contribution from Microbia for the claims asserted by Great Northern because these claims are essentially Microbia’s claims. Allowing Sienna and APHC to assert a third-party contribution claim against Microbia in the Great Northern Action would be illogical because the effect of such a claim would permit Microbia to be found secondarily liable for its own losses. Id. Because Siena and APHC do not have a contribution claim against Microbia in the Great Northern Action, Sienna and APHC’s proposed amendment to assert this third-party contribution claim is futile.
2. The AIC Action
Sienna and APHC seek to amend their answer in the AIC Action to assert a third-party contribution claim against Microbia for the property losses suffered by Lyme, whose claims are brought by AIC, as subrogee for Lyme. For Sienna and APHC to recover from Microbia as a joint tortfeasor, however, Microbia must be directly liable to AIC, or in other words, directly liable for the losses suffered by Lyme. See Westerlind, 374 Mass. at 526. Under the lease agreement between Microbia and Lyme, they each waived “any and every claim for recovery from the other for any and all loss of or damage to the Property or any part of it, or to any of its contents to the extent that such loss or damage is covered by valid and collectible property insurance.” Pursuant to this provision of the lease, Microbia cannot be directly liable to AIC for property losses suffered by Lyme and covered by insurance because such claims were waived by Lyme. AIC’s rights are no greater than Lyme’s because AIC, as subrogee, “stands in Lyme’s shoes,” meaning that Micro-bia cannot be directly liable to AIC. See National Consolidated Warehouses, Inc., 34 Mass.App.Ct. at 297. Accordingly, Siena and APHC do not have a viable contribution claim against Microbia in the AIC Action, and the proposed amendment to add such a third-party claim is futile.
B. Indemnification
Siena and APHC also seek to amend their answers to assert third-party claims for indemnification from Microbia in both subrogation actions. A right to indemnification may arise (1) where there is an express *255 contract for indemnification; (2) where a right to indemnification is implied from the contractual relationship between the parties; and (3) under the common law, where a party is exposed to liability because of the negligent act of another. Rathburn v. Western Massachusetts Electric, 395 Mass. 361, 363-65 (1985); Decker v. Black and Decker Manuf. Co., 389 Mass. 35, 37-41 (1982); Araujo v. Woods Hole, 693 F.2d 1, 2 (1st Cir. 1982). Here, Microbia did not have an express contract with Sienna or APHC, nor any contractual relationship, from which a right of indemnity could be implied. See Fall River Hous. Auth. v. H.V. Collins Co., 414 Mass. 10, 14(1992) (implied right to indemnification recognized “only when there are ‘special factors’ surrounding the contractual relationship which indicate an intention by one party to indemnify another in a particular situation”).
Siena and APHC argue, however, that they have a right to common-law, tort-based indemnification against Microbia. Common-law indemnification has been available traditionally only to one who is exposed to derivative or vicarious liability for the wrongful act of another. Economy Engineering Co. v. Commonwealth, 413 Mass. 791, 793-94 (1992); Elias v. Unisys Corp., 410 Mass. 479, 481-82 (1991); Rathburn, 395 Mass. at 364; Black and Decker, 389 Mass. at 40-41. The general rule is that a person who negligently causes injuiy to a third person is not entitled to indemnification from another person who also negligently caused that injury.[7] Rathburn, 395 Mass, at 364; Black and Decker, 389 Mass. at 40. The claims brought against Sienna and APHC in both subrogation actions seek to impose liability on Sienna and APHC for their own negligent conduct in designing and constructing the “cold room” and failing to properly install plumbing, ventilation, and gas fittings and safety controls. Given the negligence claims asserted against them, Sienna and APHC have not articulated, nor can the court discern, any facts or theory under which Sienna and APHC would be only vicariously or derivatively liable for the negligent acts of Microbia. No contractual or agency relationship, nor any other relationship upon which vicarious liability might be imposed, exists between Microbia and Sienna or APHC. Consequently, the court finds that Siena and APHC’s proposed amendment to add a third-party indemnification claim against Microbia in both subro-gation actions would be futile.
ORDER
For the above-stated reasons, Siena and APHC’s motion for leave to file third-party complaint against Microbia, Inc. in the consolidated cases is DENIED.

Kevin Robinson, Microbia’s CEO, testified at his deposition that it was Siena, as the general contractor, that hired Eagle under the lease agreement between Lyme and Microbia. (Deposition of Kevin Robinson at 51-52.) Robinson admitted, however, that he had no basis, other than his knowledge of the lease agreement, to believe that Siena hired Eagle. (Id. at 239.) In fact, the following deposition testimony clearly establishes that Microbia, not Siena, hired Eagle. First, Vincent Frank, Microbia’s facilities manager, testified that he contracted with Eagle for its cleaning services. (Deposition of Vincent Frank at 87.) Further, Frank met an Eagle supervisor at Microbia’s office just days before Eagle was scheduled to clean the fourth floor, where Frank provided him with specific instmctions for the cleaning. (Deposition of Vincent Frank at 81-82.) Finally, at Frank’s instruction, Joseph Murphy, Microbia’s lab manager, met an Eagle supervisor at Lyme’s building on the morning of July 15, 2002, to provide instmc-tions on which rooms to clean. (Deposition of Joseph Murphy at 254-69.)

Although the language of the Affirmative Defenses asserted refer to the negligence of the plaintiff, because these are subrogation actions, such language is appropriately interpreted to mean Microbia in the Great Northern Action and Lyme in the AIC Action.

Only in rare instances, none of which exist here, has indemnity been allowed to one who is not free from fault. Rathburn, 395 Mass. at 364-65.